**BRYSON v. CLARKE.**

Patent Appeal No. 3846

Court of Customs and Patent Appeals.
Nov. 22, 1937.

Andros & Wood, of Albany, N. Y. (Charles S. Grindle, of Washington, D. C., and H. Frank Wiegand, of New York City, of counsel), for appellant.

Herbert A. Baker, of Boston, Mass., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention to appellee.

Appellee's application was filed on February 20, 1930, and that of appellant was filed on August 26, 1930. Appellant is, therefore, the junior party.

There is but one count in the issue, which reads as follows: "In a centrifugal machine of the sedimentation type for the purification of liquid materials, the combination with a plurality of rotatable, approximately cylindrical, laterally imperforate drums of different purifying capacity coaxially arranged in spaced, nested relation, one within the other, of means at the top and bottom of each drum for maintaining therein, under the action of centrifugal force, a continuous layer of substantially uniform thickness of material undergoing treatment while permitting a simultaneous discharge of purified material from each of said drums, and *a common means for simultaneously supplying untreated fluid materials to each of said drums; said last mentioned means fractionating the feed to said drums in accordance with their respective purifying capacities.*" (Italics ours.)

The invention was described in general terms by the Examiner of Interferences as follows: "The invention relates to centrifugal separators adapted for purifying pulp stock. The invention contemplates an increase in the capacity of the separator by providing a second drum within the first, sufficient clearance being provided be-tween the walls of the two drums for a stream of pulp to flow along the wall of the outer drum, a second stream of pulp being caused to flow along the inner drum and both streams being discharged into a common receptacle."

We do not deem it necessary at this point further to describe the invention, but shall discuss some particular features of it later in this opinion.

The count originated in a claim of appellant's application. It was suggested to appellee by the Examiner for interference purposes, and was then copied by appellee.

As originally declared, the interference involved five counts. Appellant moved to dissolve the interference as to all of the counts, and, respecting the count before us, the ground of the motion was that it did not read upon the disclosure of appellee's application. The motion was granted as to all of the counts, except the count involved in this appeal, and as to that count the motion was denied. The interference then proceeded with the count before us as the single issue.

Both parties filed preliminary statements. Appellant alleged that he conceived the invention on or about July 5, 1929, disclosed it to others on or about July 6, 1929, and actually reduced it to practice on October 3, 1931. Of course, he was entitled to a constructive reduction to practice as of his filing date, August 26, 1930.

Appellee, in his preliminary statement, alleged that he conceived the invention and disclosed it to others on or about October 1, 1929, and constructively reduced it to practice by filing his application as aforesaid.

Appellant took testimony in support of the allegations of his preliminary statement. Appellee took no testimony, and was therefore restricted to his filing date for both conception and reduction to practice.

The Examiner of Interferences held that, although appellant should be awarded a date of conception and disclosure of the invention as of July, 1929, he was lacking in diligence in reducing the invention to practice from immediately prior to appellee's filing date, February 20, 1930, to appellant's filing date, August 26, 1930, and priority of invention with respect to the count was therefore awarded to appellee.

Appellant appealed to the Board of Appeals, assigning as error the holding of the

Examiner of Interferences that appellee had the right to make the claim corresponding to the count, and also the holding that appellant was lacking in diligence in reducing the invention to practice.

The Board of Appeals affirmed the decision of the Examiner of Interferences. It expressly held that the count reads upon appellee's application, and that appellant was not diligent in reducing the invention to practice.

From such decision appellant took this appeal; his reasons of appeal embracing both the issue of appellee's right to make the claim corresponding to the count and the issue of the diligence of appellant.

We will first consider the question of whether the elements of the count are disclosed in appellee's application, for if they are not the question of diligence of appellant in reducing the invention to practice is immaterial.

■ At the outset we would observe that appellee here invokes the rule that, ordinarily, concurring decisions of the Patent Office tribunals will be accepted by this court as conclusive, except where it appears that such decisions are manifestly wrong. This rule has been repeatedly applied by us, and it is applicable to questions of fact, and to technical and engineering questions, but it of course has no application to pure questions of law, and ordinarily it does not apply to construction of claims and counts when technical questions pertaining to such claims or counts are not involved. In the latter class of cases, while the reasoning of the Patent Office tribunals upon which their conclusions are based should be carefully considered, their decisions based thereon should in no wise be considered as controlling our decision.

■ Appellee also invokes the familiar doctrine that in interference cases counts, where the language is not ambiguous, will be given the broadest interpretation which they reasonably will support. This is well established, but it is also the rule that expressly defined limitations in counts may not be disregarded. Harris v. Henry, 63 F.(2d) 120, 20 C.C.P.A. (Patents) 883.

We now come to a consideration of the specific element of the count which, appellant contends, is not disclosed in appellee's application. This element is italicised in the count as hereinbefore quoted, and reads as follows: "* * * A common means for simultaneously supplying untreated fluid materials to each of said drums; said last mentioned means fractionating the feed to said drums in accordance with their respective purifying capacities."

That appellee discloses a common means for simultaneously supplying untreated fluid materials to each of the drums is conceded, and we think he also discloses that said common means fractionates the feed to the drums, but the disputed question is whether said common means fractionates the feed to the drums *in accordance with their respective purifying capacities.*

The Examiner of Interferences, in denying appellant's motion to dissolve, stated: "Clarke shows in Fig. 1 a common supply pipe for untreated fluid materials with two branches 18 and 19. According to the count, the feed is not necessarily divided to the drums in exact proportion to their respective purifying capacities, since 'in accordance with' is a much broader term than *in exact proportion to.* Clarke states that the rate of supply for each drum depends on the diameter thereof, so that the feed to the drums is fractionated or divided according to the capacity of the drums determined by the diameters of the drums and the size of the rings 20. If the machine is to be operated so that the mats below rings 20 exert a brushing action on the flowing stock, as described by Clarke, the feed must be adjusted accordingly. The count is obviously not limited to Bryson's specific means for dividing the supply to the drums, nor does feeding the drums in accordance with their purifying capacities necessarily mean that they must be fed in accordance with the square of their respective diameters. The fact that other claims of Bryson specifically mention the 'squares of their respective diameters' is a good reason for not so limiting counts which make no reference to 'squares of their diameters.'"

The Board of Appeals in its decision stated: "One question raised on appeal concerns the reading of the count on the Clarke disclosure. The last phrase of the count calls for 'a common means for simultaneously supplying untreated fluid materials to each of said drums; said last mentioned means fractionating the feed to said drums in accordance with their respective purifying capacities.'. In his application, Clarke discloses two pipes 18 and 19 for supplying untreated fluid materials to each of his drums and in describing these

pipes on page 5 states, 'When the drums have been brought up to speed, pulp stock is admitted through the supply pipes 18 and 19, the rate of supply for each drum depending on the diameter thereof.' *This indicates the pipes are probably of different sizes in order to supply to each drum different amounts of the material.* Bryson, on the other hand, discloses a pipe 171 for delivering the untreated material to the separator and part of the material passes through openings 21 to the interior drum separator while other portions flow over an adjustable weir 18 and into the exterior drum separator. While Bryson is specific as to the calculated amount of material to be supplied to the different drums, the count, as we read it, recites a common means for supplying the fluid material to each of the drums *and some way of regulating different amounts fed to the respective drums.* We agree with the examiner that Clarke is entitled to make the claim, as Clarke, by suitable calculations, could determine what amounts to supply to each drum *and then provide pipes of proper size to feed such amounts.* Bryson would have to make similar adjustments in accordance with the same calculations. (Italics ours.)

The Board's description of that part of appellant's device responding to the express limitation here under consideration is not strictly accurate. Appellant discloses that the pipe 171 referred to by the Board delivers the untreated material into a pan. Secured to this pan, and preferably integral therewith, and extending downward therefrom, are an inner and an outer pipe. The inner pipe feeds the outer drum, and the outer pipe feeds the inner drum. An adjustable ring is screwed onto the top of the inner pipe so that no material flows into said inner pipe until the material has reached such a height in the pan as to flow over the top of said ring, this ring forming a weir or dam in the pan. In operation the material delivered to the pan from pipe 171 flows or falls through the outer pipe *only,* until a sufficient amount has accumulated in the pan to flow over the weir and dam, at which time both the inner and outer pipes are supplied with the untreated material. By stationing the weir or dam at a predetermined height, material is supplied from the common source, viz., the pan with its dam, to the two drums in accordance with their respective capacities.

The Board's description of appellee's disclosure of supplying untreated material to the drums, above quoted, is accurate.

It seems to us that the Board committed an error of law in ignoring the positive limitation in the count that the *common means* must fractionate the feed to the drums "in accordance with their respective purifying capacities." The Board states that the count recites a common means for supplying the fluid material to each of the drums "and some way of regulating different amounts fed to the respective drums." Of course, if the count merely provided for "means regulating different amounts fed to the respective drums," without specifying that such means should also be a part of the common means for supplying the material, we would be in full agreement with the Board that regulation of the size of appellee's pipes leading from the common source of supply to the drums would fully satisfy the count. But nowhere does appellee in his application disclose or intimate that the *common means* of supply shall provide for "fractionating the feed to said drums in accordance with their respective purifying capacities." That he does provide for fractionating the supply in the common means is clear, but he does not there regulate it as called for by the count. Granting that regulation may be provided by pipes of different sizes leading from the common source of supply, as stated by the Board, it is plain that such regulation occurs outside of the common source of supply. The feed to the drums will not necessarily be regulated by the size of the orifices in the common source of supply, but by the capacity of the pipes. The orifices in the common source of supply might be much larger than the diameter of the pipes, and they would have no effect whatever upon the rate of feed to the respective drums. We repeat, the diameter of the pipes *outside* of the common source of supply, or check valves placed in such pipes, would regulate only the feed to the respective drums in appellee's structure, after being fractionated in the common supply.

In appellee's brief we find the following: "The Examiner's rulings on the claims involving the adjustable feature make it clear that there would be no more than mechanical skill to provide valves in the pipes of Clarke to adjust the feed to each drum in accordance with its purifying capacity. The same result, of

course, would be secured by choosing pipes of suitable diameter which would carry the supply from the common supply means in the proportions desired."

Of course it is true that by providing valves in the pipes of appellee the feed to the drums could be regulated in accordance with their respective purifying capacities, but it is clear that in such case such regulating means would not be a part of the common means of supply, unless the pipes of both parties, leading in appellee's device from the large supply pipe, and in appellant's device from the pan into which the material is delivered, may be considered in each case as a part of the "common means for simultaneously supplying untreated fluid materials to each of said drums."

Appellee contends that these pipes in each application leading to the drums do constitute such common means. We cannot agree with this contention. The pipes for supplying material to the respective drums are each separate means designed for only one purpose, and in no sense can they be said to be a part of the common means. Each individual pipe supplies material only to the drum with which it is connected; thus neither of these pipes can be regarded as part of a means described in the count as "simultaneously supplying untreated fluid materials to each of said drums."

A water main leading into a building is a common means of supply for all the faucets therein, but it could not be said that the respective branches to the bath tubs, basins, and kitchen are a part of the common means of supply.

We would also here observe that not only did the Board of Appeals apparently overlook or disregard the limitation here under consideration, but the Examiner of Interferences also seems to have ignored it, for his only discussion of it is the observation that the count is not limited to the specific means disclosed by appellant, and that the phrase "in accordance with" is a much broader term than "in exact proportion to." We agree with both of these statements, but neither is material with respect to the specific limitation here under consideration.

Appellee calls attention to the fact that appellant discloses that in lieu of the weir or dam in his pan the same result could be secured by orifices in the feed pan. This is true, and if appellee had disclosed such orifices or other device in the common means of supply for fractionating the feed to the drums in accordance with their respective purifying capacities, then the count would clearly read upon his application, but this he has not done.

Regardless of the diameter of the pipes leading to the drums, the orifices in the common source of supply disclosed by appellant could be of such predetermined size as to fractionate the feed to the drums in accordance with their respective purifying capacities. Therefore, such orifices, in lieu of the dam or weir shown in appellant's drawings, would be strictly in accordance with the terms of the count.

Appellee contends that appellant's means of fractionating and regulating the feed merely involves adjustability of the means for so doing, and that adjustability is not involved in the count. It is true that adjustability is not involved, but appellant discloses the elements of the count regardless of adjustability of the means. In the case of his dam or weir, its necessary height could be predetermined and then permanently fixed, without the dam or weir being adjustable, which would respond to the element of the count under consideration. The same is true if orifices in the common source of supply were provided; they would not necessarily be adjustable to respond to the count.

We are therefore constrained to hold that appellee's application does not disclose a common means of supply "fractionating the feed to said drums in accordance with their respective purifying capacities."

It is our view that, while appellee discloses a common means fractionating the feed to the drums, he does not disclose a common means fractionating said feed in accordance with the respective purifying capacities of the drums.

Appellee makes some contention that the means disclosed by him are the equivalent of the means disclosed by appellant. In his brief he states: "It will be noted that Bryson and Clarke both use tubes or pipes to carry the material from the common supply means. It could never be successfully urged in an infringement suit, for instance, that Clarke did not infringe the count since he secures the same result by substantially the same means for substantially the same purpose (Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147)."

■ Whether or not in an infringement suit it might be held that appellee's device infringed a patent, if issued to appellant, embracing the elements of the involved count is not a matter for consideration here. In re Key, 76 F.(2d) 398, 22 C.C. P.A. (Patents) 1098.

■ It is our opinion that the Board of Appeals erred in holding that the count here involved reads upon appellee's disclosure.

In view of this holding, it becomes unnecessary to consider the question of the diligence of appellant in reducing his invention to practice. In fact, the question of diligence could not properly be in issue unless appellee's application supported the count here involved.

Since we are of the opinion that the count in issue does not read upon appellee's disclosure, the decision of the Board of Appeals is reversed.

Reversed.

GRAHAM, Presiding Judge, sat during the argument of this case, but died before the opinion was prepared.