27 C.C.P.A.(Patents)

## HEUBERGER v. BECKER.
### Patent Appeal No. 4226.

Court of Customs and Patent Appeals.
Dec. 4, 1939.

Wm. T. Hedlund, of New York City, for appellant.

Wm. Douglas Sellers, of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein appellant has brought before us for review a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences awarding priority of invention to appellee.

The interference is between an application of appellant filed October 30, 1933, and an application of appellee filed April 9, 1934. Appellee being the junior

party, the burden was upon him to establish priority of invention by a preponderance of evidence. Appellant claims the benefit of the filing dates of two German applications, filed on December 2, 1932, and January 31, 1933, respectively.

Three counts are involved, of which counts 1 and 2 are illustrative and read as follows:

"1. A vacuum cleaner including a casing having an inlet port and outlet port, means for producing flow of air through said casing, a hollow part integral with said casing and opening to the interior of said casing, and a holding member for air conditioning material removably positioned within said hollow part, said hollow part and said holding member being disposed away from the center of the air stream through said casing so as to provide for free flow of air through the casing, the opening of said hollow part to the interior of said casing being closable from outside said casing.

"2. A vacuum cleaner including a casing formed with an inlet port and an outlet port and including a removable cover member, means for producing flow of air through the space enclosed by said cover member, a hollow part integral with said cover member and opening to said space, a holding member for air conditioning material removably positioned within said hollow part, and means accessible from outside said casing to close the opening of said hollow part to said space."

The involved invention, as indicated by the quoted counts, relates to vacuum cleaners which have incorporated therein an odorizer unit, which includes valve means functioning to control the flow of air past a redolent volatile medium.

The interference was originally declared upon a single count. Appellee within the motion period moved to dissolve the interference upon the ground that the count was unpatentable over the prior art.

Appellant, also within the motion period, proposed to add four new counts, numbered 2, 3, 4 and 5. Appellee opposed the admission of count 2 upon the ground that it is not supported by appellant's disclosure, and opposed the admission of all the proposed counts upon the ground that they are unpatentable over the prior art.

Appellee did not oppose the admission of said counts upon the ground that appellant's application did not disclose the

element of counts 1 and 3 before us reading "a hollow part integral with said casing," or the element of count 2 reading "a hollow part integral with said cover member."

The Primary Examiner granted appellee's motion to dissolve the interference as to original count 1 and denied the admission of proposed count 2, both upon the ground of unpatentability over the prior art. Neither original count 1 nor proposed count 2 contained the limitation above referred to, "a hollow part integral with said casing," nor did they contain the limitation "a holding member for air conditioning material" etc. contained in the counts before us.

The Primary Examiner allowed the admission of proposed counts 3, 4, and 5. While appellee did not oppose the admission of these counts upon the ground that appellant could not make claims corresponding thereto, the Primary Examiner in his decision upon the motion to dissolve and the motion to add counts said:

"It is held that both parties can make these proposed counts 3, 4 and 5. It is believed that the part 19 of Heuberger, which is specified by him as being "securely fixed in an opening 36 in the casing" (Heuberger's specification page 2, lines 7 and 8) can be called a hollow part integral with said casing and opening to the interior of said casing."

He did not, however, hold that the element referred to rendered the counts patentable over the prior art, but stated:

"The combination of references proposed by the party Becker in alleged anticipation of proposed counts 3, 4 and 5 is not deemed proper, there being no suggestion in the prior art of how the combination of references could be made. The receptacle for air conditioning material of Giambertoni is of a different type from that of Allen, and would not suggest the use of Allen's device in Ljungquist in the manner called for by proposed counts 3, 4 and 5. Proposed counts 3, 4 and 5 are therefore held to be allowable."

In his brief before the Primary Examiner opposing appellant's motion to add proposed counts, appellee not only did not claim that the counts before us did not read upon appellant's disclosure, but expressly contended that they did so read. In said brief, which is contained in the record before us, appellee's counsel stated:

"Count 3 calls for 'a hollow part integral with' and opening 'to the interior of' the cleaner casing. The 'hollow part' called for, referring specifically to the Heuberger construction, is the cylinder 19 of the odorizer unit 18 which is open interiorly of the cleaner casing 10. The count also calls for 'a holding member for air conditioning material removably positioned within said hollow part,'. This holder is the wire member 25. The count also sets forth that the odorizer unit, specifically called the 'hollow part and said holding member', is disposed 'away from the center of the air stream through said casing so as to provide for free flow of air through the casing'. The making of the 'hollow part' or body of the odorizer unit 'integral' with the cleaner 'casing' involves no invention. So long as the odorizer body is mounted on the cleaner casing so that the proper functional relationship can be obtained the fact of its being 'integral' or non-integral with the cleaner casing is entirely unimportant. The word 'integral' is entitled to no different meaning than the phrase 'mounted on'. Absolutely no advantage accrues through making the odorizer body or 'hollow part' non-removable."

After the decision of the Primary Examiner last above referred to, the interference was redeclared upon counts 1, 2 and 3, the subject of this appeal.

Both parties filed preliminary statements and took testimony.

Notwithstanding the fact that appellee's counsel at no time had claimed that the counts before us did not read upon appellant's disclosure, but expressly stated that they did so read, the Examiner of Interferences in his decision upon final hearing considered this question and found that appellant's application did not disclose the element of counts 1 and 3 reading "a hollow part integral with said casing," and did not disclose the element of count 2 reading "a hollow part integral with said cover member." In his decision the Examiner of Interferences stated:

"Although the parties' rights to make the counts are not contested, in the opinion of the examiner of interferences the right of the party Heuberger to make the counts is so clearly in question that the matter will be taken up under the authority of Smith v. Foley v. Anderson v. Smith (1908 C.D. 210, 136 O.G. 847).

"Counts 1 and 3 require inter alia 'a hollow part integral with said casing' and

count 2 'a hollow part integral with said cover member'. In the device disclosed in the Becker application the pulley cover or housing member 12 corresponds to the specified 'casing' or 'cover member' and it is constructed with a hollowed out portion 22 integral with it to receive the odorizer unit. In the Heuberger disclosure the cover member 12 corresponds to the 'casing' or 'cover member' but the hollow member 19 corresponding to the required hollow part is not formed out of casing 12 and is not in any other way an integral part of it. The specification merely states the 'outer part 19 is securely fixed in an opening 36 in the casing' and this obviously is not the same thing as being integral with it. 'Integral' means made 'all of one piece' (Funk & Wagnalls New Standard Dictionary) and 'securely fixed' may mean merely a pressed, screwed, or other temporary fit. While the one may or may not be the equivalent of the other in the manner of use intended by the party Heuberger, the examiner of interferences has no right to ignore an express limitation of the counts especially where applications not yet issued are involved. The adoption of such policy of ignoring express limitations of counts would merely lead to unnecessary indefiniteness of issues."

Priority of invention was awarded to appellee solely upon the ground of appellant's failure to disclose in his application the elements of the counts hereinbefore referred to.

Upon appeal the Board of Appeals affirmed the decision of the Examiner of Interferences awarding priority of invention to appellee. In its decision it stated:

"This award was made because of the holding of the Examiner of Interferences on his own motion that the counts of the interference did not read on the Heuberger construction. These counts define a hollow part integral with the cover member or the casing. There seems to be no question as to the showing of Heuberger and the only question is whether the word 'integral' is properly applied to two parts which are securely fixed together. In accordance with the definition of integral given in the Funk & Wagnalls New Standard Dictionary and referred to by the examiner, there is no doubt that this word is improperly applied to the Heuberger construction. While appellant refers to several cases decided by the Courts in infringement proceedings where the term 'integral' was ap-

plied broadly to a functional relation of parts, it seems to us that the Examiner of Interferences was right in holding as he did in applications in the formative stage in this office that the proper language should be insisted upon in defining a structure and not ignored. We appreciate that it is somewhat unusual for an Examiner of Interferences on his own motion to take such a stand where neither of the parties raised this question and the Primary Examiner seems to have taken a contrary view when the claims were submitted under Rule 109. However, the Examiner of Interferences is clearly within his rights in raising such a question. Note especially the practice as set forth in Rule 126. If appellant considered that the examiner did not follow the rule directly as to procedure, he should have petitioned the Commissioner before appealing from the action of the examiner. This was not done. In any event, we believe the Examiner of Interferences was clearly right in exercising his privilege of holding claims not readable in his decision on final hearing."

This was the only point decided by the board.

The Examiner of Interferences also held that the German applications relied upon by appellant fail to disclose the said elements found lacking in appellant's United States application. He further stated:

"However if on appeal the viewpoint should be adopted that the counts are readable on the Heuberger domestic application then priority should be awarded the party Heuberger for in the opinion of the examiner of interferences the counts if readable on the domestic Heuberger application are readable on the Gebrauchsmuster disclosure in the manner pointed out above and the date of filing of the Gebrauchsmuster is earlier than any date alleged in the preliminary statement of the party Becker."

Upon this point the Board of Appeals stated:

"The examiner states that if his holding that the counts are not readable upon the Heuberger domestic application be held incorrect than Heuberger is entitled to the German Gebrauchsmuster patent disclosure to prove an earlier date than any urged in the preliminary statement of the party Becker. As we approve the holding of the Examiner of Interferences that the counts do not read upon the Heuberger domestic application as well as the Heuberger for-

eign patent, it is unnecessary to pass on other questions raised as to proofs of the German patents."

Two questions are presented for our decision:

1. In view of the failure of appellee to raise, during the motion period, the question of appellant's right to make claims corresponding to the counts before us, did the Examiner of Interferences have any right to decide that question, and did the Board of Appeals err in its holding that said examiner had such right?

2. If the first question be answered in the affirmative, does appellant's application support the counts in issue?

It appears that the casing of neither party is integral. In both applications the casing is shown to consist of several parts. It is to be noted that the counts do not call for an integral casing, but·for "a hollow part integral with said casing," and we think the term "casing" as used in the counts clearly refers to the entire structure serving as a casing, regardless of whether such structure be integral or in several parts.

It is conceded that appellee discloses a hollow part which is formed by a recess in that part of the casing described in appellee's application as a "pulley cover or housing member." This member is clearly a part of the casing, and it is equally clear that the "hollow part" to receive the odorizer unit is integral with said member.

In appellant's disclosure his "hollow member" is not integral with any part of the casing in the sense of being in one piece. Appellant's "hollow member" is, to quote from his specification, "securely fixed in an opening 36 in the casing."

It seems to be conceded that appellant's structure, as disclosed in his application, performs the same functions as does appellee's structure, as defined in the counts.

■ We will first consider the question of whether, under the circumstances of this case, the Examiner of Interferences had any right on his own motion to decide the question of appellant's right to make claims corresponding to the counts.

It is clear that if the Examiner of Interferences had not raised the question he could properly have ruled that this question would not be considered by him because of failure of appellee to raise it during the motion period.

If there be no patentable distinction between the structure disclosed by appellant and that disclosed by appellee, as appellant claims, it is unfortunate that counts were not presented clearly embracing the invention common to both disclosures. In view of appellee's failure to raise the question and his express statement that the counts do read upon appellant's disclosure, the Examiner of Interferences might well have ignored the question of appellant's right to make the claims corresponding to the counts; but if he had the right to decide the question, we must determine it upon its merits.

The Examiner of Interferences, in raising the question of appellant's right to make claims corresponding to the counts, relied upon a decision of the Commissioner of Patents in the case of Smith v. Foley v. Anderson v. Smith, 1908 C.D. 210, from which we quote:

"E. A. Smith did not bring a motion to dissolve the interference on the ground that the other parties had no right to make the claims, and as no showing was made why such motion was not brought he is not entitled to urge this question under the provisions of Rule 130. The fact that no such motion has been made does not prevent the tribunals of the Office from considering the question of their own motion when it clearly appears that one or more of the parties have no right to make the claims corresponding to some or all of the counts of the issue. Where, however, no such motion was made and the parties have during the whole procedure of the case acquiesced in the position taken by the Primary Examiner in declaring the interference, a decision should be rendered that certain of the parties are not entitled to make the claims only in a clear case where there can be no doubt on the question. * * *"

Rule 126 of the Rules of the Patent Office provides as follows:

"126. The examiner of interferences or the board of appeals may, either before or in their decision on the question of priority, direct the attention of the Commissioner to any matter not relating to priority which may have come to their notice, and which, in their opinion, establishes the fact that no interference exists, or that there has been irregularity in declaring the same (rule 122), or which amounts to a statutory bar to the grant of a patent to either of the parties for the claim or claims in interference. The Commissioner may

suspend the interference and remand the case to the primary examiner for his consideration of the matters to which attention has been directed. From the decision of the examiner appeal may be taken as in other cases. If the case shall not be so remanded, the primary examiner will, after judgment consider any matter affecting the rights of either party to a patent which may have been called to his attention, unless the same shall have been previously disposed of by the Commissioner."

It would seem that under this rule the Examiner of Interferences had the right, upon his own motion, to raise the question under discussion, for if his decision upon this point was correct it "establishes the fact that no interference exists," which is expressly provided for in said rule.

■ We have no doubt that upon this question appellant could have applied to the Commissioner of Patents to remand the case to the Primary Examiner, in which case the interference might have been suspended and the case remanded to the Primary Examiner for his consideration of this question. This however was not done and appellant must be deemed to have waived his rights in this respect.

■ Upon the record before us we cannot hold that the Board of Appeals erred in considering the right of appellant to make claims corresponding to the counts before us, or in holding that the Examiner of Interferences, on his own motion, had the right to consider and determine this question.

This brings us to the question of whether or not appellant's disclosure supports the counts in issue.

It is conceded that the hollow part of appellant's structure is not a part of the casing in the sense of being not separable from the casing. Appellant concedes that his structure corresponding in function to this element consists of a "hollow part" that is securely fastened to the casing, serving the same purpose while so fastened as a hollow part cast in one piece with the casing.

Appellant, however, makes two contentions: 1. that appellee's structure does not, any more than does appellant's structure, respond to the narrow meaning of the word "integral," and that it would be manifestly unfair to hold that appellant's disclosure does not support the counts without consideration of whether or not appellee's disclosure supports them; and, 2. that the term "integral" should be given the meaning applied to it by both parties as shown by the record.

■ We will first consider the contention of appellant that appellee's "hollow part" is not integral with the casing, using the term "integral" in its narrow sense.

This contention is based upon the fact that appellee's entire casing is not integral, but consists of separate pieces. The "hollow part" referred to in the counts is integral with only one part of the casing, viz., the "removable pulley cover or housing member."

The difficulty with this argument is that the counts do not call for an integral casing, but only a hollow part integral with the casing; obviously the pulley cover is a part of the casing for appellee's mechanism, and the "hollow part" referred to in the counts is integral therewith, the pulley cover and hollow part consisting of a single piece. We must therefore hold that appellee's application discloses the element here under consideration.

■ With respect to appellant's second contention, were the word "integral" ambiguous as applied to mechanics, or if, as used in this connection, it had both a broad and a narrow meaning, we would agree with appellant that, as the claims were proposed by him, it would be proper to resort to his disclosure as to the meaning intended by the term, and we should give weight to the construction given thereto by the parties in the earlier prosecution of the interference.

However there seems to be but one common meaning of the word "integral" as applied to mechanics. Funk & Wagnalls New Standard Dictionary states:

"Integral, * * * 4. Mech. All of one piece (of metal or wood); as, the shaft and base are cast integral. * * *"

■ We think it must be held that the counts before us must be construed as embracing a "hollow part" formed of one piece with the casing, or, in other words, integral with it, and this appellant does not disclose. It may be that appellant's structure in this respect is the full equivalent of the structure disclosed by appellee, but it is a familiar rule that positive limitations in counts may not be ignored. This is so well established that citation of authority is unnecessary.

Were it permissible for us to apply the doctrine of equivalents we might come to a different conclusion with respect to the right of appellant to make claims corresponding to the counts before us. However this court has consistently declined to apply this doctrine in the construction of counts in Patent Office proceedings. In re Key, 76 F.2d 398, 22 C.C.P.A., Patents, 1098. This is upon the theory that when parties before the Patent Office deliberately formulate claims they should not thereafter in Patent Office proceedings be heard to contend that any limitation contained therein is not material.

In view of the conclusion which we have reached, it is unnecessary to consider other matters considered and decided by the Examiner of Interferences but not passed upon by the Board of Appeals.

For the reasons herein stated the decision appealed from is affirmed.

Affirmed.