30 C.C.P.A.(Patents)

## RENSTROM v. SOLOMON.

### No. 4657.

Court of Customs and Patent Appeals.

Dec. 1, 1942.

Rehearing Denied Jan. 29, 1943.

Motion for Leave to File Second Petition for Rehearing Denied Feb. 26, 1943.

Cushman, Darby & Cushman, of Washington, D. C. (William M. Cushman and Gorham F. Freer, both of Washington, D. C., of counsel), for appellant.

Charles M. Palmer, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Examiner of Interferences awarding priority of invention to the party Solomon as to four counts involved in an interference declared between a patent issued to the party Renstrom, and an application of the party Solomon, the subject matter being broadly defined as hair curlers.

The patent to Renstrom, No. 2,118,737, bears date of May 24, 1938, the application, serial No. 184,459, therefor having been filed January 11, 1938. The application of Solomon, serial No. 177,666, was filed December 2, 1937. So, Renstrom is the junior party.

At some time during the prosecution of Solomon's application, apparently March 3, 1939, he amended it by copying four of the six claims of the Renstrom patent and requested an interference declaration. The interference was declared March 20, 1939.

Counts 1 and 2 (which are claims 1 and 3 of the patent) are typical. They read:

"1. A roller for coacting with an end of a hair curler to secure clamp means thereof in hair clamping position, the roller being polygonal.

"2. A roller for pivotal mounting and coacting with an end of a hair curler to secure clamp means thereof in hair-clamping position, the roller being resilient and having a polygonal periphery."

During the motion period (following the opening of the preliminary statements of the respective parties) Renstrom moved to dissolve the interference. The motion was denied by the Primary Examiner. Renstrom took no testimony and orders by the Examiner of Interferences followed, culminating in one of November 27, 1940, making the award of priority to Solomon, which, upon appeal by Renstrom, was affirmed by the board in the decision now before us for review.

From the decision of the Primary Examiner we quote the following description, the italics being supplied, and numerals omitted: "The common invention relates to a hair curler comprising a tubular mandrel, a semi-tubular clamping finger pivotally connected to the mandrel, and a loop whose intwined ends form the pivot for connecting the tubular, semi-tubular, and loop members, which loop is provided at its bight portion with an element to be partly received within the open end of the tube for holding the parts closed. In operation of the device, the outer end of a strand of hair is placed beneath the clamping finger and bound to the mandrel, the strand of hair is then wound about the mandrel and clamping finger, and, when the strand is completely wound the loop is moved into closed position and so retained in Renstrom by the *polygonal* figure mounted on the bight portion of the loop being partly received in the tubular mandrel and in Solomon by the *toothed wheel* being partly received within the tubular mandrel. The devices do not differ in the type of means mounted at the bight portion of the loop that of Renstrom, however being designated a *polygonal preferably octagonal roller of rubber* * * *; while that of Solomon is designated a soft rubber disc stay * * * having a *peripheral rim or surface provided with a closed band of spaced teeth* * * *."

The particular feature about which the controversy revolves is the element de-

944

scribed in counts 1 and 3 as a polygonal roller, and in counts 3 and 4 as a roller having a polygonal periphery—descriptions which, in the final analysis, have the same meaning.

In his motion to dissolve, Renstrom stated two general grounds. The first is that Solomon has no right to make the counts because of lack of any disclosure of, or claim to, a polygonal roller, or a roller having a polygonal periphery. The second is alternative, viz., that if the counts be construed to read upon the subject matter disclosed in the Solomon application they are unpatentable to Solomon over certain references which were made of record by the Primary Examiner in connection with Solomon's application during its prosecution and before the claims which constitute the counts had been copied into same.

In connection with the first ground Renstrom made the contention that the counts should be regarded ambiguous and, therefore, interpreted in the light of his patent from which they were taken.

Under the view which we take of the case only the first ground need be considered.

We feel constrained to disagree with the holding of the tribunals of the Patent Office that the toothed wheel shown in the application of Solomon meets the requirement of the counts for a polygonal roller, or a roller having a polygonal periphery.

Webster's New International Dictionary defines "polygon" as "A figure, generally plane and closed, having many angles, and hence many sides, esp. one of more than four angles."

The Primary Examiner said, "The sides of the teeth [on the periphery of the wheel shown in Solomon's application] are obviously the sides of a polygon." The board, we suppose, entertained the same view.

The teeth on the periphery are integral with the wheel and constitute a part of same. As shown in the drawings of the Solomon application the two sides of each tooth slope to a narrow point at its outer end and the wheel, viewed either with or without its toothed part, is circular in shape. It does not seem to us proper to regard the "sides of the teeth" as sides of the wheel itself, and under the wording of the claims the limitation as to the shape of the roller considered as a whole is the important feature.

For the reasons stated, we are unable to agree that the roller shown by Solomon may properly be held to be polygonal, or to have a polygonal periphery.

Consequently the decision of the board affirming that of the Examiner of Interferences is reversed.

Reversed.