### SOLOMON v. RENSTROM.
### Civil Action No. 452.

District Court, D. Nebraska, Omaha Division.

Aug. 23, 1944.

Charles M. Palmer, of Washington, D. C., and M. L. Donovan and John C. Mullen, both of Omaha, Neb., for plaintiff.

Richard E. Robinson, of Omaha, Neb., and William M. Cushman, Gorham F. Freer, and Cushman, Darby & Cushman, all of Washington, D. C., for defendant.

DONOHOE, District Judge.

This is an original action brought for trial de novo of a controversy heretofore involved in a ruling of the Patent Office, and a decision of the Court of Customs and Patent Appeals. The action is authorized by the provisions of section 4915 R.S., 35 U.S.C.A. § 63. The matter involved is the interpretation of two certain patents owned and held by the parties to this action, and which may be specifically described as follows: Application for patent, serial No. 117,666, filed by Nathan L. Solomon, plaintiff herein, on December 2, 1937, and Letters Patent, No. 2,118,737, issued to the defendant Carl W. Renstrom, dated May 24, 1938, the application therefor having been filed on January 11, 1938.

The matter in controversy involves claims numbers 1, 3, 4 and 5 of the defendant's patent, which reads as follows:

"1. A roller for coacting with an end of a hair curler to secure clamp means thereof in hair-clamping position, the roller being polygonal."

"3. A roller for pivotal mounting and coacting with an end of a hair curler to secure clamp means thereof in hair-clamping position, the roller being resilient and having a polygonal periphery.

"4. In a curler, tubular means about which hair is adapted to be wrapped, a clamping bail carried by said means, and a clamping roller mounted on the bail to clip into engagement with an end of the tubular means, said roller being polygonal.

"5. In a curler, tubular means about which hair is adapted to be wrapped, a resilient clamping bail carried by said means, and a resilient roller mounted pivotally on the bail to clip into engagement with an end of the tubular means, said roller having a polygonal periphery."

The question involved is whether these claims read upon the hair curler disclosed in the Solomon application, serial No. 117,666. Solomon's claim of invention, as shown by his application (plaintiff's exhibit 2, pp. 13–21), discloses a roller having a toothed ring, or a toothed rim having grooves in place of the polygonal roller claimed by Renstrom. This object is described in the Solomon application as: "These claims call for a stay provided with a toothed rim to prevent rotation of the stay during interlocking relation with the tube." And particularly in claim 1 (plaintiff's exhibit 2, p. 16): " * * * a compressible resilient disc rotably mounted on said loop and having a toothed rim adapted to disengageably interlock with one end of said tube." And in claim 2: " * * * having a toothed rim adapted to disengageably interlock with one end of said tube, said toothed rim having grooves adapted to receive a terminal portion of said tube to prevent rotation of said disc during interlocking relation of the latter with said tube." And in the specifications (plaintiff's exhibit 2, pp. 14, 15): " * * * a relatively soft rubber disc or stay (10) having a peripheral rim or surface provided with a closed band of spaced teeth 11." And: "The teeth 11 of the stay define grooves which receive the forward part of the tube thus preventing accidental rotational displacement of the stay and consequently after wheel 10 is in part within the tube it is held in a desired stayed relation and the roughened or corrugated surface of the wheel also constitutes means to prevent slippage of the wheel when grasped by the

fingers of the operator in shifting the stay to its locking or unlocking position." It will be observed that no mention is made of the roller as being polygonal, or having a polygonal periphery, but rather to a disc or roller having a toothed groove, with a roughened or corrugated surface.

In the decision of the Primary Examiner, I find a description which we may use with profit, as follows:

"The common invention relates to a hair curler comprising a tubular mandrel, a semi-tubular clamping finger pivotally connected to the mandrel, and a loop whose intwined ends form the pivot for connecting the tubular, semi-tubular, and loop members, which loop is provided at its bight portion with an element to be partly received within the open end of the tube for holding the parts closed. In operation of the device, the outer end of a strand of hair is placed beneath the clamping finger and bound to the mandrel, the strand of hair is then wound about the mandrel and clamping finger, and, when the strand is completely wound the loop is moved into closed position and so retained in Renstrom by the polygonal figure mounted on the bight portion of the loop being partly received in the tubular mandrel and in Solomon by the toothed wheel being partly received within the tubular mandrel. The devices do not differ in the type of means mounted at the bight portion of the loop, that of Renstrom, however being designated a polygonal preferably octagonal roller of rubber * * *; while that of Solomon is designated a soft rubber disc stay * * * having a peripheral rim or surface provided with a closed band of spaced teeth * * *"

By stipulation duly made by the parties at a pre-trial investigation, and approved by the court, the issue was definitely stated as follows:

"That the only issue to be determined in this proceeding is identical with the issue argued before the United States Court of Customs and Patent Appeals in Washington, D. C. on November 6, 1942, in the case of Carl W. Renstrom v. Nathan L. Solomon, Patent Appeal Docket No. 4657 (Patent Office Interference No. 76,-856) and decided December 1, 1942, (133 F.2d 942), said issue being whether claims 1, 3, 4 and 5 of the defendant's said patent No. 2,118,737 (referred to as counts 1, 2, 3 and 4 in Patent Appeal Docket No. 4657), read upon the hair curler disclosed in Solomon's said application, Serial No. 117,-666."

The contention resolves itself to the simple proposition of whether the description or claim disclosed by Solomon concerning the rubber roller constitutes a claim to a polygonal periphery, or does the description or claim of Renstrom in his patent equally describe and apply to the rubber roller in the Solomon invention. In other words, is the toothed wheel shown in the application of Solomon a polygonal roller, or a roller having a polygonal periphery?

This brings us to the question of what is a polygon. Webster's Revised Unabridged Dictionary defines a polygon as: "A plane figure having many angles, and consequently many sides; esp., one whose perimeter consists of more than four sides; any figure having many angles." We find in Webster's Collegiate Dictionary the definition somewhat restricted as follows: "A figure, generally a plane closed figure, having many angles, and hence many sides, esp. one of more than four angles." The definition contained in Funk & Wagnalls New Standard Dictionary is: "A closed figure bounded by straight lines or arcs, especially more than four; a figure having many angles." It will be observed that the lexicographers state the number of sides or angles that are necessary to constitute a polygon, but they do not place a limit on the number of angles which the figure may contain.

The disc involved in this case is 5/16th of an inch in diameter, and has a circumference of 1¼ inches. There are twenty-four teeth on the periphery, which are very small and amount to little more than a corrugated surface.

Upon the trial of the case the plaintiff called a number of distinguished gentlemen, qualified as mathematicians, and men of great learning. These gentlemen had seemingly no difficulty in readily determining that this disc was a polygon, and had a polygonal periphery. However, none of these gentlemen stated or advised the court when, by increasing the angles on a polygon, the figure ceased to be a polygon and became a circle. Surely some place along that line of development there is a dividing line, and no one will contend that a few diagonal scratches on the plain surface of a disc or ring would make of it a polygon. The evidence of these learned gentlemen was admitted in the hope that

226

it would aid the court in its interpretation of the claims of the parties rather than as pertaining to any question of fact. The interpretation of a patent is a question of law for the court. Singer Mfg. Co. v. Cramer, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Hurin v. Electric Vacuum Cleaner Co., Inc., 6 Cir., 298 F. 76; Edward G. Budd Mfg. Co. v. C. R. Wilson Body Co., 6 Cir., 21 F.2d 803; Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 99 F.2d 1, 3.

■ Expert testimony is not permissible in interpreting claims of a patent. Raytheon Mfg. Co. et al. v. General Electric Co. et al., D.C., 34 F.Supp. 40, 47; Id., 123 F.2d 819.

Since I am reminded that the foregoing is the law, the court must necessarily disregard the testimony of the scholarly gentlemen who were called as experts. I am unable to find in their testimony anything that persuades me to follow their contention. If we accept the theory of the professors, a circular saw could be described as a polygonal saw, since it is a circular disc containing cutting teeth around the outer rim. Yet, no one would refer to it as a polygonal saw, but rather every one as a circular saw. If we are to accept the contention of the professors, we would refer to a cogwheel as a polygonal wheel or disc, simply because it has teeth or cogs around its outer rim useful for transmitting or retarding motion. No one refers to such a wheel as a polygonal wheel. We know such an object as a cogwheel. There must be a dividing line or place where a polygonal figure or disc ceases to be a polygon and becomes a circle. Is not that place when the disc or roller becomes circular, and any teeth or cogs on the periphery become integral with the wheel and constitute a part of the same? That was the holding of the Court of Customs and Patent Appeals. Renstrom v. Solomon, Cust. and Pat.App., 133 F.2d 942, 944. I quote the following from the opinion of the court written by Presiding Judge Garrett:

"The Primary Examiner said, 'The sides of the teeth (on the periphery of the wheel shown in Solomon's application) are obviously the sides of a polygon.' The board, we suppose, entertained the same view.

"The teeth on the periphery are integral with the wheel and constitute a part of same. As shown in the drawings of the Solomon application the two sides of each tooth slope to a narrow point at its outer end and the wheel, viewed either with or without its toothed part, is circular in shape. It does not seem to us proper to regard the 'sides of the teeth' as sides of the wheel itself, and under the wording of the claims the limitation as to the shape of the roller considered as a whole is the important feature."

■■ While this is a trial de novo, and we are not necessarily bound by the holding of the Court of Customs and Patent Appeals, still it is the final appellate tribunal of the Patent Office, made up of learned and distinguished men, especially schooled in administering the patent laws, and since the parties and the matter in controversy were the same as is presented now, that decision is entitled to great weight, particularly if we apply the rule announced in Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657, which in effect is that when a question between contending parties is decided in the Patent Office, such decision must be accepted as controlling in any subsequent suit between the same parties unless the contrary is established by evidence which carries thorough conviction. The late Judge Sullivan, in Gerhardt et al. v. Goserud, D.C., 24 F.Supp. 161, 162, in applying the rule said:

"However, a suit under said section (R.S. § 4915) of the statute is more than a mere appeal—it is an application to the court to set aside the action of one of the executive departments of the government, the one charged with the administration of the patent system. It is a new proceeding instituted in the courts to set aside the conclusions reached by an administrative department of the government, and to give to plaintiffs the rights awarded to the defendant by the Patent Officers. It is a controversy between individuals over a question of fact which has been settled by a special tribunal entrusted with full power in the premises. * * *

These findings of fact create a presumption in favor of Goserud's priority, and the decision made by the officials in the Patent Office must be accepted as controlling upon the question of priority in any subsequent suit between the same parties, unless the contrary is established by testimony, which in character and amount makes it convincingly clear that a mistake

was made in awarding priority of invention to the defendant herein."

Also see Globe-Union, Inc., et al. v. Chicago Telephone Supply Co., 7 Cir., 103 F.2d 722, 727, which further expounds the rule.

 It is the court's best judgment that the rubber disc in the Solomon invention involved herein is not polygonal, but is a roller or cogwheel; that it does not have a polygonal periphery. Consequently, the claims of the defendant Renstrom do not read upon the hair curler disclosed in Solomon's said application, serial No. 117,-666. The bill of complaint of the plaintiff will therefore be dismissed with costs awarded to the defendant. Judgment will be entered accordingly. The attorneys for the defendant will prepare appropriate findings and conclusions in keeping with this memorandum, and submit the same in appropriate manner to counsel for the plaintiff for approval as to form.