**SOLOMON v. RENSTROM.**

No. 13036.

Circuit Court of Appeals, Eighth Circuit.

Aug. 6, 1945.

Charles M. Palmer, of Washington, D. C. (M. L. Donovan and John Mullen, both of Omaha, Neb., on the brief), for appellant.

William M. Cushman, of Washington, D. C. (Richard E. Robinson, of Omaha, Neb.,

and Gorham F. Freer, of Washington, D. C., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a decree of the trial court in an interference proceeding which had its origin in the United States Patent Office between a pending application by Solomon, plaintiff below, filed December 2, 1937, and United States patent to Renstrom, defendant below, application for which was filed in the United States Patent Office January 11, 1938. During the prosecution of the Solomon application for patent, Renstrom gave notice that Solomon's device, a hair curler, as disclosed in his patent application, violated the Renstrom patent, also for a hair curler. Solomon contested the priority of Renstrom as to Claims 1, 3, 4 and 5 of the Renstrom patent and thereupon amended his application by copying these four claims of the Renstrom patent and requested an interference declaration. The interference was declared and Renstrom moved to dissolve it. The motion was denied by the primary examiner of the Patent Office. No testimony was submitted, but on hearing the examiner awarded priority to Solomon, which upon appeal by Renstrom was affirmed by the Board of Appeals of the United States Patent Office. From this decision Renstrom appealed to the United States Court of Customs and Patent Appeals. The Court of Customs and Patent Appeals reversed the decision of the Board of Appeals and held that the claims of the defendant Renstrom did not read upon the hair curler disclosed in Solomon's application. Renstrom v. Solomon, Cust. & Pat. App., 133 F.2d 942.

Following the entry of this decision, Solomon filed in the Court of Customs and Patent Appeals (1) petition for rehearing, (2) request for permission to file second petition for rehearing, and (3) motion to set aside the decision, all of which were considered by the court and denied. Thereupon Solomon brought an original action for trial de novo of the controversy involved in the Patent Office proceedings and the decision of the Court of Customs and Patent Appeals, as authorized by the provisions of Section 4915, Revised Statutes, Title 35 U.S.C.A. § 63.

The parties stipulated in the lower court that:

"The only issue to be determined in this proceeding is identical with the issue argued before the United States Court of Customs and Patent Appeals in Washington, D. C. on November 6, 1942, in the case of Renstrom v. Solomon, Patent Appeal Docket No. 4657, and decided December 1, 1942, 133 F.2d 942, said issue being whether claims 1, 3, 4 and 5 of the defendant's said patent No. 2,118,737, read upon the hair curler disclosed in Solomon's said application, Serial No. 177,666."

The controversy revolves about Claims 1, 3, 4 and 5 of the Renstrom patent. These read as follows:

"1. A roller for coacting with an end of a hair curler to secure clamp means thereof in hair-clamping position, the roller being polygonal."

"3. A roller for pivotal mounting and coacting with an end of a hair curler to secure clamp means thereof in hair-clamping position, the roller being resilient and having a polygonal periphery.

"4. In a curler, tubular means about which hair is adapted to be wrapped, a clamping bail carried by said means, and a clamping roller mounted on the bail to clip into engagement with an end of the tubular means, said roller being polygonal.

"5. In a curler, tubular means about which hair is adapted to be wrapped, a resilient clamping bail carried by said means, and a resilient roller mounted pivotally on the bail to clip into engagement with an end of the tubular means, said roller having a polygonal periphery."

Do these claims read upon the hair curler disclosed in the Solomon application? This application describes a roller having toothed ring or toothed rim, and having grooves in place of the polygonal roller claimed by Renstrom. Claim 1 of Solomon's application describes the roller as:

" * * * a compressible resilient disc rotatably mounted on said loop and having a toothed rim adapted to disengageably interlock with one end of said tube."

In Claim 2, referring to this rotatable member, it is described as follows:

" * * * having a toothed rim adapted to disengageably interlock with one end of said tube, said toothed rim having grooves adapted to receive a terminal portion of said tube to prevent rotation of said disc during interlocking relation of the latter with said tube."

This is further described as:

" * * * the relatively soft rubber disc or stay having a peripheral rim or surface provided with a closed band of spaced teeth 11. * * * The teeth of the stay define grooves which receive the forward part of the tube thus preventing accidental rotational displacement of the stay and consequently after wheel 10 is in part within the tube it is held in a desired stayed relation and the roughened or corrugated surface of the wheel also constitutes means to prevent slippage of the wheel when grasped by the fingers of the operator in shifting the stay to its locking or unlocking position."

The trial court in stating the question for solution said:

"The contention resolves itself to the simple proposition of whether the description or claim disclosed by Solomon concerning the rubber roller constitutes a claim to a polygonal periphery, or does the description or claim of Renstrom in his patent equally describe and apply to the rubber roller in the Solomon invention? In other words, is the toothed wheel shown in the application of Solomon a polygonal roller, or a roller having a polygonal periphery?"

The Court of Customs and Patent Appeals answered this inquiry in the negative, as did also the trial court. There is, of course, a presumption that the findings of the trial court are correct, and they will not be set aside on appeal unless clearly erroneous. Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c. A decision of the Court of Customs and Patent Appeals, while not controlling in an original action thereafter brought, will not be disturbed in such subsequent action between the same parties and involving the same issue, unless a contrary conclusion is established by testimony which in character and amount carries complete conviction. Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657; Rousso v. Barber, 3 Cir., 3 F.2d 740; Globe-Union, Inc. v. Chicago Telephone Supply Co., 7 Cir., 103 F.2d 722. In Morgan v. Daniels, supra [153 U.S. 120, 14 S.Ct. 773], referring to this rule, the court among other things, said:

"Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction.".

In the Morgan case the Supreme Court was considering a decision by the last appellate tribunal of the Patent Office. Since that time the procedure has been changed somewhat, and the last appellate tribunal now is the United States Court of Customs and Patent Appeals, but the rule announced must be equally applicable to a decision of the Court of Customs and Patent Appeals. The applicable procedure and rule of practice is well stated by the Circuit Court of Appeals of the Third Circuit in Rousso v. Barber, supra [3 F.2d 741], where it is said:

"Though the Court of Appeals of the District of Columbia becomes, in a patent prosecution, an appellate tribunal of the patent office, its decisions are not final. Federal courts, in suits formally brought, have full jurisdiction to re-examine all matters there determined and come to opposite decisions. Quaker City Chocolate Co. v. Loughran, 3 Cir., 296 F. 822. Yet it is equally well established that 'when a question between contending parties, as to priority of invention is decided (by the Court of Appeals of the District of Columbia) the decision there made must be accepted as controlling, * * * in any subsequent suit between the same parties, unless the contrary is established by testimony which, in character and amount, carries thorough conviction.' Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657 * * *."

A complete transcript of all proceedings had in connection with the interference, both in the Patent Office and before the Court of Customs and Patent Appeals, was introduced in evidence on the trial of this case, so that everything that was before the Court of Customs and Patent Appeals was also before the trial court. The issue in each of these courts was the same and involved the construction of the claims of the Renstrom patent and the claims of the Solomon application for patent. This presented a matter to be determined by the court as a matter of law. Motor Wheel Corporation v. Rubsam Corporation, 6 Cir., 92 F.2d 129; Simplex

Ry. Appliance Co. v. Wands, 8 Cir., 115 F. 517; Winans v. New York & E. R. R. Co., 21 How. 88, 16 L.Ed. 68.

In addition to what was before the Court of Customs and Patent Appeals, four witnesses testified on behalf of plaintiff relative to certain figures or drawings, the purpose being to define the word "polygon," and the words "polygonal periphery," presumably as these terms are used in the Renstrom patent. Each of these witnesses also expressed the view that the roller, or disc, or wheel, of plaintiff's curler, as described in his application for patent, was a polygon and had a polygonal periphery. There were also received in evidence certain letters containing questionnaires which had been answered by expert mathematicians. There was also offered in evidence copy of a dictionary containing definition of the word "polygon." There may have been other similar testimony. It was apparently all considered by the trial court as it is referred to in some detail. It was all in the nature of expert testimony and the question is whether or not this additional testimony was sufficient to overcome and outweigh the determination of the Court of Customs and Patent Appeals.

In plaintiff's petition for rehearing before the Court of Customs and Patent Appeals, and in his request for leave to file a second petition for rehearing, there appears an exhibit showing the same geometrical figures testified to by plaintiff and certain other expert witnesses during the trial in the instant case. In Solomon's petition for rehearing before the Court of Customs and Patent Appeals there were presented three affidavits by mathematicians, and in each affidavit the affiant described the figures shown on Solomon's Exhibit Z in the instant case, and expressed the opinion that the roller of Solomon's hair curler was a polygon. So, in the instant case, substantially the same evidence and statements by experts were presented as were presented to the Court of Customs and Patent Appeals, if we consider the testimony offered in support of the petition for rehearing.

■ The credibility of all witnesses, including experts, and the weight to be given their testimony, is to be determined by the trier of facts, and the court is not bound to accept the opinion of experts as more than advisory, even though such testimony may be undisputed. In the instant case, the trial court specifically held that it must necessarily reject the testimony of these experts because, "I am unable to find in their testimony anything that persuades me to follow their contention." The interpretation of the claims of a patent is not to be determined by the opinion of experts, but is a question of law for the court. Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 138 F.2d 197; American Ins. Co. v. Scheufler, 8 Cir., 129 F.2d 143; Singer Mfg. Co. v. Cramer, 192 U.S. 265, 24 S.Ct. 291, 48 L.Ed. 437; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147. The additional evidence was therefore simply advisory. The court was not required to accept it even though it may have stood without contradiction. Hawkinson v. Johnston, 8 Cir., 122 F.2d 724, 137 A.L.R. 420; Staudenmaier v. Johnson, 7 Cir., 117 F.2d 397; Norton v. Jensen, 9 Cir., 49 F. 859; Winans v. New York & E. R. Co., supra; Svenson v. Mutual Life Ins. Co., 8 Cir., 87 F.2d 441.

■ It is to be observed that in his application, Solomon in referring to the stay element in his device, never refers to it as a polygon. He does refer to it as a wheel and as a disc; also as "a resilient disc rotatably mounted on said loop and comprising a roughened surface." The essential feature of this roller is that it is circular; that, indeed, is its dominant characteristic. The mere fact that it may have a roughened or corrugated surface does not to the ordinary individual certainly, give to it the characteristics of a polygon. It apparently has just such a periphery as a quarter of a dollar or a half dollar, yet no one would think of characterizing these silver pieces as being polygons. They are discs, and that is the general description of this roller as given by Solomon in his application.

■ The words of defendant's patent must be interpreted in the light of the disclosures of that patent, including the specifications and drawings. Haggerty v. Rawlings Mfg. Co., 8 Cir., 14 F.2d 928; McKays Co. v. Penn Electric Switch Co., 8 Cir., 60 F.2d 762; Freeman v. Altvater, 8 Cir., 129 F.2d 494. His patent describes this roller as a polygon, and the term "polygonal periphery" is readily recognized as descriptive of the octagonal roller. It has no teeth, nor is its periphery roughened nor corrugated.

This is not a suit for infringement and hence, the doctrine of equivalency may not be invoked. Bryson v. Clarke, Cust. & Pat.App., 92 F.2d 720; Heuberger v. Becker, Cust. & Pat.App., 107 F.2d 601.

In the final analysis, this case presents a situation in which the only testimony introduced at the trial that had not been introduced and considered by the Court of Customs and Patent Appeals was in the nature of opinions of expert witnesses. As already observed, the trial court was not bound to credit this character of testimony, and it affirmatively appears that the court rejected it. It can not therefore be said that a conclusion contrary to that adopted by the Court of Customs and Patent Appeals was established "by testimony which in character and amount carries thorough conviction."

The judgment appealed from is therefore affirmed.