## In re COX et al.

### Patent Appeal No. 3363.

Court of Customs and Patent Appeals.
Dec. 10, 1934.

Charles H. Potter, of Washington, D. C. (H. T. Stowell, of Washington, D. C., W. J. Willis, and E. P. Boynton, of New York City, of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The invention involved in this appeal relates to a liquid medium for heat and pressure transfer, and particularly to a liquid used in internal combustion motors, which will resist freezing at certain low temperatures and boiling at certain high temperatures. It is also claimed to be useful for the transfer of pressure in hydraulically operated devices where low temperatures are encountered. Appellants claim as novel features a high boiling point, low freezing point, certain desirable thermal properties for heat transfer, noncorrosiveness to metals, freedom from offensive fumes or odors, and that it mixes well into a unitary substance and has the characteristic of being free from hazards "in shipping and use, and from fire."

The three claims of appellants' application were rejected by the Primary Examiner of the United States Patent Office as not being inventive over the prior art cited, which decision of the Examiner was affirmed by the Board of Appeals, and from the decision of the Board appellant has appealed here.

The claims read as follows:

"1. A substantially anhydrous liquid medium comprising ethylene glycol and diethylene glycol, and having a freezing point below —30° F.

"2. A substantially anhydrous liquid heat-transfer medium consisting substantially of ethylene glycol and diethylene glycol, and containing at least about 40% of the diglycol.

"3. A substantially anhydrous liquid heat-transfer medium consisting of approximately equal proportions of ethylene glycol and diethylene glycol."

The references relied upon are: Hibbert, 1213368, January 23, 1917; McElroy, 1268135, June 4, 1918; Richter's Organic Chemistry, Spielmann, vol. 1 (2d Ed. 1922) p. 313; Anti-Freeze Solutions, Department of Commerce, Letter Circular 28, Revised December 1, 1925, p. 5.

Applicants' invention consists entirely of combining without water ethylene glycol and diethylene glycol in certain proportions.

The Hibbert patent is for a liquid composition made by mixing glycols with water. He teaches that he can mix a single glycol with water or several glycols with water, and that the resulting liquid when mixed with equal portions, or about 60 parts water and 40 parts glycol, will remain liquid at temperatures far below the freezing point of water if used by itself. The patentee in his specification states: "I have further found that the mixture of ethylene, propylene and butylene glycols obtainable from oil gas, is a particularly valuable mixture for mixing with water to produce the water-glycol composition." He further states: "Instead of using the individual glycols with water or a mixture of two or more glycols with water, in producing the composition of the present invention, polyglycols can be used, or mixtures of polyglycols, particularly mixtures of polyglycols with the glycols themselves. * * * By varying the relative amounts of the polyglycols the viscosity and other properties of the composition can be correspondingly varied and regulated."

We are of the opinion that Hibbert teaches the use of water with all his mixtures.

McElroy involves a hygroscopic composition to be used as a substitute for glycerine, and comprises a mixture containing glycols with solid soluble hygroscopic bodies such as carbohydrates or mixtures of carbohydrates.

The page from Richter's Organic Chemistry was cited as showing a polyglycol series of which diethylene glycol was the first member and which is the simplest of the polyglycols formed from ethylene glycol.

The Letter Circular 28 of the Department of Commerce was referred to as showing that temperature resistance below —30° F. has been obtained by a number of common antifreeze mixtures, and that both glycerine and ethylene glycol are commonly used ingredients of such mixtures.

The Examiner rejected the claims on the ground that the references fully disclose mixtures of glycols and polyglycols; that in mixing ethylene and diethylene glycols it was an obvious expedient to eliminate the water so as to obtain a higher boiling point mixture; and that the proportions used were not critical and were matters of selection for the chemist skilled in the art.

The Board of Appeals, in affirming the Examiner's decision, said: "It seems to us that under Hibbert's teachings it would not be a matter of invention to vary the proportions of the glycols and polyglycols with respect to each other and with respect to the water content to give mixtures having the desired range of boiling and freezing temperatures for the purpose at hand. It is quite obvious that if the mixture is to be used under the high temperature conditions contemplated by the applicants, the water content should be eliminated. We see no invention in the mere testing, as applicants have done, of various proportions of glycols and polyglycols to give the temperature ranges best suited for their purpose. It is our view that the claims were properly rejected on the references relied upon by the examiner, and particularly on the patent to Hibbert discussed above."

▮ It will be noticed that in claim 1, the phrase "comprising ethylene glycol and diethylene glycol, and having a freezing point below —30° F.," is used. No definite proportions of the two glycols used are set out, and the claim calls for a freezing point below —30° F. We agree with the board that there is nothing new in producing an anti-freeze solution which will resist a temperature as low as —30° F. Also the claim is broad enough to permit the use of other ingredients with the two mentioned. We are of the opinion that the decision of the Board rejecting this claim on the grounds stated should be affirmed. In re Gray et al., 53 F.(2d) 520, 19 C. C. P. A. (Patents) 745.

▮ We are, however, not in accord with the decision of the board as respects claims 2 and 3. Nowhere in the prior art is it suggested that by combining ethylene glycol and diethylene glycol alone, and without water, in the proportions specified in the claims, or, in any proportions for that matter, a mixture will result which will resist freezing at a point of —50° or lower, or that has the high boiling point that this mixture is shown to possess. The particular feature of this case that impresses us is the fact that it is conceded that either ethylene glycol or diethylene glycol, by itself, does not possess the quality of resisting as low a temperature as it does when mixed with water, and that a mixture of ethylene glycol and diethylene glycol without water has the unexpected result of resisting a lower temperature than the two glycols when mixed with water. It may be that it is obvious that the omission of water from the combination will produce a liquid with a higher boiling point than if water is mixed therewith, but, in view of the above considerations, it does not seem reasonable to conclude that it was obvious that the omission of water from the mixture of the two would produce the unusual results here claimed.

We do not agree with the board in its conclusion that the mere testing of the various proportions of the two glycols involved, in the absence of water, and arriving at a satisfactory result, was lacking in invention, or that it resulted in that which was obvious to the chemist skilled in the art. We think that appellants, by their testing of the mixtures made in the proportions set out, made a discovery or invention within the meaning of the patent laws, and that they should be awarded the protection of the patent laws therefor.

We are of the opinion that in the realm of chemistry, the demarcation between what is or is not obvious is sometimes a narrow one, and that experimentation in mixtures of chemical elements, the properties of each of which are thoroughly understood, may produce wholly unexpected and useful results. It is not disputed in this case that the liquid produced by appellants is an advancement

632

in the art, and that such a mixture with such results was, up to the time of their disclosure, unknown to those skilled in the art. We cannot conclude that Hibbert's patent, with its indefinite quantities of chemicals and water, suggested the invention here claimed.

Appellants secured and filed before the tribunals below an affidavit by Harold Hibbert, professor of chemistry of McGill University, a man conversant with the art involved, and who was the inventor in the reference patent. In our judgment this affidavit goes far to eliminate the question of obviousness, emphasized by the tribunals below. This authority stated:

"That the use of glycols, their derivatives, and related compounds together with water in the production of low-freezing heat and pressure transferring media has, since about 1916, been accepted in the art, but· that prior to about 1930 anhydrous liquid compositions containing glycols, their derivatives, and related compounds, having properties suitable to furnish protection against both low temperatures, say —40° F., and temperatures which would readily cause vaporization of one or more constituents of ordinary low-freezing liquid media, for instance 350° F., were unknown.

"That the art relating to the compositions of this class, such as is represented by patent [Hibbert] No. 1,213,368, furnishes no clue to suggest the mode of preparing such low-freezing, high-boiling liquid compositions, and that although for several years a need for liquid media possessing properties which would permit it to remain in the liquid state, over a very wide range of temperatures has existed and has been recognized, especially in the field of internal combustion engines for aeronautical purposes, no liquid composition having the desired properties was suggested by those skilled in the art, despite the prior knowledge of the subject· of heat transferring media as represented by patent No. 1,213,368. Further evidence of the lack of obviousness of anhydrous compositions capable of remaining in the liquid state over a wide range of temperature is provided by the fact that unitary substances, such as ethylene glycol, were proposed and used for this purpose, but this was acknowledged as an inadequate solution of the problem, since while ethylene glycol possesses a sufficiently elevated boiling point, it congeals at temperatures far above those against which protection is desired.

"That liquid compositions such as are included in patent application Serial No. 482,370, filed September 16, 1930, by Harry [Henry] L. Cox and Leo J. Clapsadle, which compositions are anhydrous or substantially so, and which are composed of glycols, polyglycols, and related compounds in admixture with each other, and which do not contain water in appreciable quantities are not taught to those skilled in the art by the teachings of· the prior art, of which the said patent No. 1,213,368 is typical.

"The deponent further states that the properties of particular mixtures of glycols, polyglycols, and related compounds, as shown by the aforesaid application for patent, are not capable of prediction from a knowledge of the properties of the individual components of such compositions, so far as he is, in his experience and knowledge of the chemistry of these compounds, aware."

The patent to McElroy, referred to by the Examiner, but not referred to by the Board, teaches the fact that glycols containing dissolved solids are hygroscopic and may replace glycerine. We see nothing in this patent which detracts from the patentability of said claims 2 and 3.

In view of the above considerations, we are constrained to disagree with the view of the tribunals below that what appellants accomplished was obvious to the chemist skilled in the art, and conclude that claims 2 and 3 should have been allowed.

The decision of the Board of Appeals as to claim 1 is affirmed; as to claims 2 and 3 it is reversed.