25 C.C.P.A.(Patents)

## MOELLER v. SIX.

### Patent Appeal No. 3904.

Court of Customs and Patent Appeals.

April 25, 1938.

Harry A. Beimes, of St. Louis, Mo., for appellant.

Lockwood, Lockwood, Goldsmith & Galt, of Washington, D. C. (Ralph G. Lockwood and Dwight B. Galt, both of Washington, D. C., and Harry W. Lindsey, Jr., of Chicago, Ill., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention of the subject matter defined in the counts in issue—1 to 6, inclusive—to Walter J. Six, appellee.

The invention relates to an expansion and tensioning device for pistons, and, as defined in count 1, such device in combination with a piston.

Count 1 was apparently suggested to the parties by the Primary Examiner. The other counts originated in appellant's application.

The interference is between appellant's application No. 708,362, filed January 26, 1934, as a continuation, in part, of a former application No. 698,294, filed November 16, 1933, and appellee's application No. 637,032, filed October 10, 1932.

Appellant being the junior party, the burden was upon him to establish priority of invention by a preponderance of the evidence.

Counts 1 and 3 are illustrative of the involved counts. They read:

"Count 1. The combination of: a piston having a head, a slotted piston skirt, and piston pin bosses; and a piston skirt expander, said expander comprising oppositely disposed spring arms, said arms extending at an angle to the axis of said piston and converging toward said piston head, and means intermediate the upper portions of said spring arms encircling said piston pin bosses."

"Count 3. An expander for pistons comprising a U-shaped plate member the sides of which comprise spring arms, and a pair of spaced perforated lobes projecting from said U-shaped member between said arms, said lobes being disposed in opposition and lying in planes parallel to a medial plane intersecting said arms."

The purpose of the "piston expander," defined in the involved counts, is to restore worn pistons to their original shape so that they will operate properly.

Appellant moved to dissolve the interference on the ground that appellee was not entitled to make the claims constituting the counts in the interference.

The motion was overruled by the Primary Examiner, and evidence was submitted by the parties before the Examiner of Interferences on the issue of priority.

Upon the record submitted, the Examiner of Interferences, and, on appeal, the Board of Appeals, held that appellant had failed to establish conception of the invention prior to appellee's filing date, October 10, 1932, but that, assuming that the evidence was sufficient to establish conception as early as July, 1932, appellant had failed to establish that he had reduced the invention to practice prior to appellee's filing date, or that he was diligent in reducing it to practice at a time immediately prior to that date.

As to the question of the right of appellee to make the claims constituting the counts in issue, the Board of Appeals stated that it was in agreement with the views expressed by the Primary Examiner in his decisions holding that appellee was entitled to make the counts, and, accordingly, awarded priority of invention to appellee.

Although it is stated in appellant's reasons of appeal that the Board erred in holding that appellant had failed to establish conception of the invention prior to appellee's filing date, and proper diligence in reducing the invention to practice, counsel for appellant states in his brief that "From the decision of the Board of Appeals, Moeller appeals to your Honors on the question of Six's right to make the claims which, of course, carries, with it priority of invention," and that "*Since Moeller is depending, for a judgment of priority, on Six's failure to disclose the invention defined by the counts of the Interference issue, we shall consider only that part of the Board's decision dealing with Six's disclosure.*" (Italics ours.)

At the time of the oral arguments in this court, we understood counsel for appellant to state that the sole issue before the court

was whether appellee had the right to make the claims constituting the counts in issue; nevertheless, we have examined the evidence introduced by appellant relative to his conception of the invention and his claim of diligence in reducing it to practice, and are in accord with the conclusion reached by the tribunals of the Patent Office on those issues. Under the circumstances, we deem it unnecessary to discuss that evidence.

Relative to appellee's right to make the claims constituting the counts in issue, counsel for appellant contends that appellee does not disclose in his application a piston skirt expander having "oppositely disposed spring arms *for expanding the piston skirt in a direction at right angles to the pin bosses,*" as does appellant in his application; that, on the contrary, appellee discloses an expander which exerts *expansion action* about the entire piston skirt; that appellee definitely states in his application that the oppositely disposed perforated lobe portions are so designed and arranged that they exert an outward pressure against the piston pin bosses and the "corresponding side of the skirt"; and that (we quote from the brief of counsel for appellant) :

"According to the laws of physics the expansion of the upper part of the expander against the boss portions cannot avoid interfering with the expansion of the spring arm, because the force of the portions against the bosses and the force of the spring arms are opposed forces. These forces are acting upon the inside of an annular member in divergent directions. Such being the case, *the expansion in the direction at right angles to the pin bosses would be,* to a large extent, *nullified by the force acting parallel with the pin bosses.*

"The Primary Examiner and the Board have both failed to appreciate that *Moeller is not attacking the Six disclosure because it does not show oppositely disposed members for exerting pressure at right angles to the pin bosses, but is attacking Six's disclosure because the counteracting forces exerted against the bosses will prevent the alleged spring arms from exerting their force against the skirt at right angles to the pin bosses.*

"The whole tenor of Moeller's disclosure is that the *expander expands* the piston skirt *only* in a *direction at right angles to the pin bosses* to produce a somewhat oval-shaped skirt; and the *claims should be interpreted as they would if they contained the limiting phrase 'oppositely disposed spring arms for expanding the skirt only in a direction at right angles to the pin bosses.'* While this language is not in the claims, the specification clearly describes a U-shaped expander which can only function in this manner; and counts 2, 3 and 5 are specifically limited to 'U-shaped member.' Thus, the distinction made in the applications of the respective parties *between a U-shaped member, which expands the skirt at right angles to the pin bosses,* and a *cup-like member for exerting expansive action substantially about the entire skirt, is of the essence of this controversy.* The two expanders are of fundamentally different shape for performing fundamentally different purposes, and we submit that these purposes are inconsistent and cannot exist side by side in the expander of either party." (Italics ours.)

Counsel for appellant further take exception to the holding of the Primary Examiner on the motion to dissolve, and that of the Board of Appeals that appellee disclosed in his application a *U-shaped skirt expander.* Counsel argues that, as a matter of fact, appellee's expander is not U-shaped but cup-shaped.

Counsel for appellant concedes, as indeed he must, that appellee refers in his specification to his expanders as being in "U-shape or cup-like form." Furthermore, appellee's drawings, particularly figures 4 and 5, disclose expanders substantially in the shape of the letter "U," and, in claims 1 and 2 of his original application, appellee's expander is referred to as being "substantially U-shaped."

So far as the shape of their expanders is concerned, we can see no appreciable difference in the disclosures of the parties.

Appellee stated in his application that:

"The invention resides in a compressible spring expander adapted to be compressed within a worn piston to exert outward pressure against the skirt. More particularly, it relates to expanders of *simple U-shape or cup-like form* having a *plurality of downwardly extending fingers which may form in effect a split wall adapted to engage and bear against the inner surface of the piston skirt over a substantial area to force it radially outward to conform to a worn or out-of-round cylinder.* For this purpose, a pair of oppositely disposed expanding fingers or wall sections bear against the slotted portion of the skirt and that portion opposite thereto, *while another pair of fingers or wall sections may engage and*

press outwardly against the opposed boss portions, to expand, the circumferential length of the skirt. * * *

"Said spring [expander] is substantially U-shaped or 'cup-like', being adapted to be forced in inverted position upwardly within the piston skirt toward the head so that the downwardly extending expanding fingers or split wall sections *bear against the inner surface or side walls of the split skirt of the piston.* To permit of the flexing of the expander under pressure, it may be described as having a bight portion adapted to lie adjacent the piston head. Extending downwardly from said bight portion, *there are a pair of wall sections or resilient fingers curved to conform with the curvature of the piston skirt and adapted to be forced inwardly against the inherent spring tension therein when mounted within the skirt so as to normally exert an outward pressure thereon.*" (Italics ours.)

It is clear from appellee's specification that his spaced perforated lobes "may engage and press outwardly against the opposed boss portions." However, there is no such teaching in appellant's application. This difference between the functions of the disclosures of the parties is clear to us, and was recognized by the Primary Examiner and the Board of Appeals.

Counsel for appellant insists that the structures of the two parties are "fundamentally different in shape" and perform fundamentally different functions, and that there is, therefore, no interference in fact.

In its decision, the Board of Appeals stated, inter alia:

"The party Moeller argues that Six shows a cup-shaped expander and that it does not have spring arms and does not function in the same manner as a U-shaped expander with spring arms required by some of the counts, and as shown by Moeller where the counts originated. From the parts of the specification quoted above it is obvious that Six refers several times to the downwardly extending resilient members which press outwardly against the piston skirt. It is true that in Figs. 4 and 5 there are narrow side plates near the top which connect the spring arms. These plates, however, will not to any material extent prevent the arms * * * acting as spring arms. Even though the upper part may appear slightly cup-shaped, the general configuration of the expander is U-shaped and the arms * * * function as spring arms to press the skirt outwardly. In op-

eration, the arms * * * are intended to press outwardly on the piston skirt and expand it at right angles to the piston pin. The upper part of the expander is also stated as pressing outwardly against the opposed boss portions. This is an additional function which the expander performs but it does not interfere to any material extent with the expanding function of the spring arms. * * *

"Original claim 1 referred to a 'leaf-spring expander' which is U-shaped in cross section. Likewise, claim 9 presented during the prosecution, refers to 'a spring piston expander located within the piston skirt and presenting line contacts with the skirt to each side of the split and in substantial parrallelism therewith.'

"In view of the above, it appears to us that the expander in Six may be properly designated as U-shaped in the same sense as used in the Moeller application. The expander has spring arms which bear against the piston skirt and serve the same function as the arms in the Moeller structure."

It will be observed that the Board was of opinion that, although the outward pressure of the lobes against the "opposed boss portions" in appellee's structure was an additional function, it did not, "to any material extent," prevent the spring arms from performing their intended functions; that is, exerting proper expanding force against the piston skirt at right angles to the pin bosses.

There is no limitation in any of the counts of the interference requiring that the piston skirt must be expanded *only* at right angles to the pin bosses. The counts define structure, and the invention in issue is to be found in them.

We think it is too clear for argument that, so far as structure is concerned, the involved counts read directly on appellee's disclosure.

It may be that a somewhat different result *might be obtained* by appellee's device from that obtained by appellant's, due to the fact that in appellee's expander the oppositely disposed perforated lobe portions exert outward pressure against the pin bosses, while, at the same time, the oppositely disposed spring arms expand the piston skirt in a direction at right angles to the pin bosses. Just what that difference might be, we are unable to say.

It is stated in the quoted excerpt from the brief of counsel for appellant that ap-

pellant's expander produces a somewhat oval-shaped piston skirt. We find nothing whatsoever in appellant's application to suggest that his expander is intended to produce such a result. On the contrary, the whole tenor of his disclosure is that the tension against the piston skirt at right angles to the pin bosses shall be sufficient to restore the skirt to its proper shape, and maintain it properly expanded.

Whether there be elements in appellant's disclosure entitling him to a patent is not before us, nor are we in a position to suggest that claims might be drawn to distinguish appellant's structure from that of appellee.

■ The counts in issue are broad and unambiguous, and limitations may not be read into them for the purpose of avoiding the involved interference, as argued, in effect, by counsel for appellant.

The decision is affirmed.

Affirmed.