## RAYTHEON MFG. CO. et al. v. GENERAL ELECTRIC CO. et al.

District Court, N. D. New York.

June 12, 1940.

Victor A. Macomber, of Utica, N. Y. (Elmer J. Gorn, of Newton, Mass., and Delos G. Haynes, of St. Louis, Mo., of counsel), for plaintiff.

Harrison F. Lyman, of Boston, Mass., W. G. Gartner, of Schenectady, N. Y., and Rowland V. Patrick, of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., of counsel), for defendant.

COOPER, District Judge.

This suit is brought by plaintiffs under Section 63 of Title 35 United States Code Annotated, later given in full, for a decree determining that plaintiffs are entitled to the patent sought by them.

On December 21st, 1925, the plaintiff Smith filed an application, serial No. 76,793, for a patent on gaseous conductor.

On December 30, 1930, plaintiff Smith filed an application, Serial No. 504,611, for patent on gaseous conduction device.

On January 8, 1931, plaintiff Smith abandoned the first application, thus leaving the first and second applications both pending from December 24, 1930, to January 8, 1931. Smith's second application is claimed to be a continuation of his first application. It is admitted that the Smith first and second applications are substantially identical.

On December 23, 1926, the defendant Hull filed an application, Serial No. 156,713, for a patent on thermionic devices.

On February 17th, 1933, the patent office examiner wrote as follows to Smith relative to his second application and to Hull relative to his first application: "In view of the probable interference the following claim is suggested under the provisions and penalties of rule 96."

The suggested claim is as follows: "An electrical discharge device comprising a sealed envelope containing electrodes including an anode and a thermionic electrode, having a cavity of large internal surface provided with relatively small opening for the passage of electrons from the interior of the said cathode to said anode to maintain a discharge between said cathode and anode, and an alkaline earth oxide coated on the interior walls of said cavity, said walls being positioned in shielding relative to one another, a filamentary heater positioned in said cavity and an attenuated gas in said envelope at a pressure sufficiently high to neutralize space charge."

In due time Smith added said claim in his second application and Hull added the same in his application.

On April 4th, 1933, the patent office declared interference 68,016 between said Smith application and said Hull application with the aforesaid suggested claim as the count or issue of the interference.

On August 24th, 1933, Smith filed a motion to shift the burden of proof, basing his motion on the fact that the filing date of the Smith application was more than one year prior to the filing date of the Hull application and upon the fact that the disclosure in the two Smith applications were substantially identical.

The Interference Examiner denied Smith's motion for shifting of the burden of proof without taking any testimony and held against Smith on the ground that the Smith applications, including his first application, do not disclose the invention defined in the suggested claim at bar.

On Dec. 1, 1933, Hull filed a motion to dissolve interference but the Interference Examiner refused to entertain the Hull motion because the motion was filed long after the time allowed by the rules and without sufficient showing to excuse delay.

On August 26, 1937, the Interference Examiner, after taking the proof offered by both parties, decided that Smith was not entitled to receive a patent on the invention specified in the suggested claim at bar on the ground that defendant Smith had shown no conception of the invention of the claim at issue when only one gas is used and also held that Hull was the first inventor of the said invention.

While the final decision was based on the ground that Hull was the first inventor, the Interference Examiner said with reference to disclosure after discussing the disclosure of Smith's first application 76,-793 of December 21, 1925; a previous application of Smith 55,262, and Smith's Exhibit 56:

"* * * It is held that it (Smith's Ex. 56) establishes only that an oxide coating may be used (on the interior wall of the cathode) with a protective gas of atmospheric pressure or greater * * *."

"It follows that Smith has not established a conception of the Count in issue by Exhibit 56 and the testimony relative thereto."

On July 14th, 1938, the Patent Office Board of Appeals decided that Smith was not entitled to receive a patent on the invention specified by the suggested claim at bar on the ground that Hull was the first inventor of the said invention. They also approved the Examiner's finding that Smith had not proved conception by Smith, Ex. 56.

No appeal was taken by the plaintiffs here to the United States Court of Customs and Patent Appeals.

Thereupon the Commissioner of Patents refused to grant a patent to Smith.

Smith and his assignee, the Raytheon Manufacturing Company, then brought this action under Section 63 of the United States Code, Title 35, 35 U.S.C.A. § 63.

This Section reads as follows: "No. 63. Bill in equity to obtain patent. Whenever a patent on application is refused by the Commissioner of Patents, the applicant, unless appeal has been taken from the decision of the board of appeals to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided, in which case no action may be brought under this section, may have remedy by bill in equity, if filed within six months after such refusal; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication and otherwise complying with the requirements of law. In all cases, where there is no opposing party a copy of the bill shall be served on the commissioner; and all the expenses of the proceedings shall be paid by the applicant, whether the final decision is in his favor or not. In all suits brought hereunder where there are adverse parties the record in the Patent Office shall be admitted in whole or in part, on motion of either party, subject to such terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court may impose, without prejudice, however, to the right of the parties to take further testimony. The testimony and exhibits, or parts thereof, of the record in the Patent Office when admitted shall have the same force and effect as if originally taken and produced in the suit."

Upon this trial, the record in the patent office is admitted in part on the motion of the respective parties. Plaintiffs also gave new evidence of five witnesses and offered 15 new exhibits.

There is also in evidence here plaintiffs' cross-examination of the defendant Hull.

█ To succeed in this suit the burden is on the plaintiffs. They must show that Smith's application discloses the subject matter of the claim in issue here and that the plaintiff Smith is entitled to priority of date of invention as against the defendant Hull.

█ The burden upon the plaintiff is not an ordinary burden to establish his contention by a fair preponderance of evidence but the plaintiff assumes a heavy burden of proof. Morgan v. Daniels, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657; Cleveland Trust Company v. Berry, 6 Cir., 99 F.2d 517; Gold et al. v. Gold, 7 Cir., 237 F. 84.

Plaintiffs assert that the Board of Patent Appeals were in error in holding that Hull was the first inventor of said invention, and that it was further error for the Board of Patent Appeals to refrain from deciding the question of whether the Smith application disclosed the invention at bar as suggested in the claim in suit.

The plaintiff asserts that the record on this trial shows that the Smith application disclosed the invention at bar and that Smith was the first inventor of the invention involved herein.

The defendants assert that the decisions of the Interference Examiner and the Patent Office Board of Appeals were right and that there is no new evidence having any substantial materiality or validity which would change the decision of the Patent Office that Smith was not the first inventor and also that, regardless of the correctness of the said decision, neither of the Smith applications showed the invention defined in the suggested claim in suit and that, therefore, plaintiffs could not succeed.

A curious and unique situation exists here to which the Court's attention has been called since this case was finally submitted.

Interference was granted between three other applications of Smith not here appearing or involved herein and the same Hull application here involved.

The Interference Examiner stated in his final decision of August 26, 1937: "This interference is closely related to interferences 66,017, 71,931, and 71,932 which are decided of even date herewith."

The Interference Examiner also stated in that decision that the count herein involved is substantially the same as count 5 of Interference 66,017, except that in interference 66,017, the filamentary heater is defined as being "for said cavity", whereas in the instant case it is defined as being "positioned in said cavity", this being somewhat more specific.

The Interference Examiner also said in the last mentioned decision that the disclosures of the two Smith applications here are substantially duplicates.

In the three other interference proceedings the decision was in favor of Smith, both by the Interference Examiner and the Board of Patent Appeals.

Upon appeal to the Board of Customs and Patent Appeals, that Court affirmed the decision of the Board of Patent Appeals. The decision of the Court is reported in 109 F.2d 228.

Thereupon Patent No. 2,201,817 for electronic discharge method and apparatus was granted to Smith, May 21, 1940.

In the patent thus granted to Smith there are 80 claims.

Claim No. 5 of the granted patent is word for word like the claim suggested by the Interference Examiner in the application here involved save in the one respect above referred to.

We then have plaintiff Smith granted a patent upon three other applications not here involved except that the earliest one is urged by Smith as supporting the disclosure here claimed by Smith and possibly conception as well, in each of which an interference was declared by the Interference Examiner based upon the same Hull application here involved.

It is worthy of note also that the disclosure in the patent granted Smith refers to a second gas and several of the claims of the granted patent also speak of a second gas.

True, two of the three Smith applications for patent were earlier than Smith's first application in this suit and all three applications were earlier than the Hull application.

But the interference here was earlier in number and was granted on April 4, 1933, the same day the first of the three interferences was granted (66,017). The other two interference proceedings were outgrowths of No. 66,017 and were granted December 26, 1935, on motion of Smith.

The subjects of the various applications for patent involved in the three interference proceedings was electric discharge tubes for rectifying alternating currents.

This situation became known after briefs were submitted and is not covered therein.

The three other interference proceedings were concerned with questions not passed on in the interference proceeding here.

Despite this anomalous situation this case must apparently be decided as if there were no other interferences and no other patent granted, containing a claim similar in most respects.

This case seems to turn upon these two questions:

1. Does the Smith application here involved disclose the subject matter, or in other words, the invention set out in the claim here in issue suggested by the Interference Examiner and adopted by both parties?

2. If there is such disclosure has Smith shown priority of date of invention?

In determining the question of disclosure, the first Smith application will be taken for what it discloses, as well as the second Smith application, since both parties seem to accept the view that the disclosure is substantially identical, which view was also taken by the Interference Examiner.

Both of Smith's applications in the disclosure speak of a second gas and purport to give the functions or part which each gas plays in the operation of the device.

As before shown, the Interference Examiner decided first, upon the motion to shift the burden, that Smith did not disclose the invention set forth in the claim at issue and, second, after taking proof, that Smith had no conception of the invention of the claim and that Hull was the first inventor.

The Board of Patent Appeals affirmed on the latter ground but did also declare that the Interference Examiner was right in holding that Smith had shown no conception.

Before turning to the matter of disclosure consideration should be given to plaintiffs' contention that the claim in issue is so clear and unambiguous that disclosure need not be shown by plaintiffs.

They cite to support this contention: Ryerson v. McCurley, Cust. & Pat.App., 88 F.2d 497, 499.

The Ryerson case seems to be without application for there two claims had been allowed to each party and the C.C.P.A. held that the sole question was whether the appellee "could make the counts at bar." The counts read squarely on the structure of both parties.

The Court finally said: "As we view it, in this kind of proceeding, appellant having conceded that the language of the counts reads upon McCurley's structure, his argument that the counts do not contain all the elements which will make the McCurley structure an operative one is irrelevant and without merit."

Defendants here have never conceded that the count or claim at issue reads on plaintiffs' structure but have always asserted to the contrary and the Interference Examiner so understood and so found in his decision on the motion to shift the burden.

In Moeller v. Six, Cust. & Pat.App., 96 F.2d 279, 282, the appellant urged that appellees did not disclose the invention defined in the interference counts.

The Court held: "We think that it is too clear for argument that, so far as structure is concerned, the involved counts read directly on appellee's disclosure."

While the Court also said: "The counts in issue are broad and unambiguous, and limitations may not be read into them for the purpose of avoiding the involved interference, as argued, in effect, by counsel for appellant."

But this was said to meet what the Court apparently took as an effort on the part of appellant to distinguish between appellant's and appellee's structure and to be entitled to a patent on appellant's structure without affecting appellee's right to a patent.

Just prior to the quoted sentence the court said: "Whether there be elements in appellant's disclosure entitling him to a patent is not before us, nor are we in a position to suggest that claims might be drawn to distinguish appellant's structure from that of appellee."

It is clear that plaintiff here does not claim that he is entitled to a patent differing from the suggested claim but seeks a patent in that very count as it stands. This authority has no real analogy.

In Wemple v. Pierce, Cust. & Pat.App., 75 F.2d 998, 999, the interference counts involved metal alloys. The disclosures covered a wider range of alloy content than did the claims or counts.

The Board of Patent Appeals awarded priority of invention to the appellees (Peirce et al.), saying: "The ranges recited into the counts cover substantial parts of the ranges disclosed in the two applications."

The Court said in affirmance: "No contention is made respecting the correctness of the foregoing finding. The brief filed on behalf of appellants states: 'It is apparent that the counts of the interference fall within the ranges of both of the parties.'"

No such concession exists in the case at bar.

It is reasonably clear, therefore, that these authorities give no support to plaintiff's contention which apparently seems essentially to be that if the count or claim is clear and unambiguous, it matters not whether or not such claim or count is disclosed.

■ The plaintiff's contention in this respect, therefore, cannot be sustained and it is held that this case is no different from other patent cases where applicant must disclose the invention as defined in the claims.

■ It is true that plaintiff does not set forth the suggested claim in his application but that such claim was suggested by the Interference Examiner as a basis for an interference proceeding between two rival applicants. But Smith accepted the suggested claim, as he was obliged to do, and added it to his application and cannot now be heard that his position is changed from what it would have been had such claim been in his application. Hull did likewise and is equally bound.

Plaintiffs also claim that when the Interference Examiner formulated the claim or count in issue for the Interference proceedings under Rule 96, he must be considered as holding that both the Smith and Hull applications disclosed the invention defined by such claim. Rule 96 does provide: "Whenever the claims of two or more applications differ in phraseology, but relate to substantially the same patentable subject matter, the examiner shall suggest to the parties such claims as are necessary to cover the common invention in substantially the same language. * * *."

■ It is not reasonable that when an Interference Examiner thus formulates an interference claim and this he apparently does, without granting the interested parties a hearing, such formulation of claim by him precludes either party from showing that the other party's application does not show the invention set forth in the formulated claim, or conclusively determines that there is such disclosure in both parties applications.

Indeed, when the Interference Examiner denied Smith's motion to shift the burden of proof to Hull he denied it on the sole ground that neither Smith application disclosed the invention defined in the suggested or formulated claim. The rule must be construed as confined to the respective claims of the two applications and to have no relation to disclosures.

■ In any event, the Court under Section 63 of Title 35 U.S.C.A. is not bound by any such patent office ex parte adjudication, if any there be.

The Interference Examiner, on Smith's motion to shift the burden to Hull, analyzed the suggested claim in these words:

"The Count thus calls for the use of an activating (an alkaline earth oxide) coating when only a single gas is used at a pressure in which the gas is ionized and neutralizes space discharge.

"In other words, it defines a discharge tube in which an activating coating is used without the use of a relatively high pressure non-ionizable gas such as argon to protect the coating. This is the essence of the invention defined by the Count."

Accepting this definition of the Count or claim in issue, one looks in vain for such disclosure in either Smith application.

Figure No. 1 of Smith's application No. 504,611 (the earlier application No. 76,793 of December 21, 1925 being concededly substantially identical) shows a glass bulb sealed, designated by the letter T.

Within the glass bulb is shown the anode (A) and the cathode (c) boxlike in form. The cathode contains a small opening (B) through which electrons pass from the interior of the cathode to the anode. Within the cathode is located a filamentary heater (F) receiving heating current by a conductor from a transformer (H) located without the glass tube. The current to be passed through the glass tube and to be rectified by it comes

from another transformer (U) also outside the cathode by means of a conductor (L).

At V. within the sealed glass tube is a small quantity of caesium. Caesium is an alkali metal from which caesium vapor is given off at high temperatures. The caesium gas is the attenuated gas referred to in the claim or count at issue, whose function is to neutralize space discharge when having a pressure sufficiently high for that purpose.

There is no showing of the interior of the cathode being coated with alkaline earth oxide or any other covering.

In the earlier part of his application (page 3, sheet 4) Smith makes this explanation of his device:

"In accordance with the invention, alkali gas or vapor such as caesium is used in the tube, and this vapor is highly ionized in the region of the active surface of the cathode. The ionization is preferably affected by light and heat in the region adjacent to the cathode surface. The ionized region is confined very closely, as for example, by the walls of the cathode in the case of a hollow cathode1 in which case photo ionization means are located inside the cathode.

"For greatest efficiency, the gas is heated sufficiently to attain an intense thermal ionization and the surface of the cathode is maintained at approximately the same temperature to restrict loss of heat from the gas to the cathode. In the case of caesium, intense ionization will be maintained with a temperature of about 1300 degrees C. Loss by radiation and conduction through the cathode may be further reduced by making the cathode surface reflecting."

Smith also says (Sheet 7, Pltf. Ex. A2): "The interior surface of the cathode and the opposing face of the anode may be brightly reflecting to reflect radiation from the gas inside the cathode back into the body of the gas."

So far Smith has shown a device but not the device described in the claim or count in issue.

Smith then sets forth alkali earth coating for the interior of the cathode but only if a second gas, argon, is used to protect that coating from disintegration.

At sheet 5 of the application Smith says:

"When using a second protecting gas as hereinafter described the caesium may, for example, be on the active surface of the cathode in the form of a coating of the metal or an alloy of the metal.

"In another aspect the invention involves the use of a second gas, mixed with the aforesaid vapor, the second gas serving inter alia one or more of the following purposes depending upon its character and pressure; to prevent disintegration of hot surfaces such as that of the incandescent surface of the photoionizing means in case such means is incorporated within a hollow cathode, to prevent discharge between anode and cathode on reverse potential, and to shield the active cathode surface, thereby to permit the use of a surface coating of caesium, alkali oxide, etc., without rapid disintegration of the coating. * * *."

"The argon also prevents arcing between the electrodes when large reverse potentials are applied and it shields the electrodes from bombardment by positive caesium ions of appreciable velocity. This latter function enables the use of a composite cathode such as a cathode having its surface coated with an oxide or caesium without having the coating stripped off by the decomposing action of the positive ion bombardment. In the illustrated embodiment for example, the interior surface of the hollow cathode may at all times have a layer of caesium condensed upon its surface. The heat from the filament F. keeps the cathode hot enough for copious electron emission, it being sufficient for this purpose to maintain the cathode at a dull red heat. The cathode may initially have a coating of barium, strontium, calcium or other alkali earth metal or a mixture of these materials, either in the form of an oxide or otherwise, in which case the argon protects the alkali coating from bombardment and increase the life of the coating enormously."

The Interference Examiner on the motion to shift the burden described what Smith's disclosure is and what it is not in these words: "It is accordingly clear that Smith did not disclose the use of a coating on the cathode unless the second gas is used. To define properly the Smith invention when the coating is used, it is necessary also to recite the second gas,

and in the absence of such gas a claim not only defines an incomplete and undisclosed invention but also one contrary to the teaching of the disclosure."

The examiner was correct in holding that Smith did not disclose the invention described in the claim or count at issue.

A case having some analogy in principle is Pelzer v. Weaver, Cust. & Pat. App., 97 F.2d 166, where the interference count related to an invention involving one stream of gas and the appellant's two streams of gases process was held not covered by the count.

After the final hearing, upon which proof was taken, the Interference Examiner held that there was nothing to show that Smith had conception. of the claim in suit.

In his final decision he said:

"From the above it is apparent that Smith had no conception even at the time he filed the application Ser. No. 76,793 on December 21, 1925, that a rectifier in which the caesium was ionized by radiation could be made with a coated cathode without a protective gas; consequently in view of the vagueness of his disclosure in Exhibit 56 and the failure of any witness including Smith himself to assert that there had been any disclosure of the use of a coating without a protective gas, it is held that it establishes only that an oxide coating may be used with a protective gas at atmospheric pressure or greater.

"As the count calls for an interiorly coated cathode and an attenuated gas which, as pointed out in tthe decision on the motion to shift the burden of proof (paper 30, pages 15 and 16) means a gas below atmospheric pressure, it follows that Smith has not established a conception of the count in issue by Exhibit 56 and the testimony relative thereto."

Does the proof before the Interference Examiner on the final hearing and the proof taken on the trial here require a different decision?

The new evidence here upon the point of disclosure consists of the five witnesses and fifteen exhibits.

Dr. Bush, president of Carnegie Institution of Washington, D. C., and a former director of plaintiff Raytheon Company, testified at some length. Among other things he was asked:

"Q–280. Does the Smith original patent application (Smith Ex. A-1), show an electrical discharge device comprising" etc. (reciting the exact language of the claim in issue here).

Objection was made by defendant that the question called upon the witness to interpret the claim and decide a question which was peculiarly one for the Court. The objection was overruled, the Court stating that he thought the objection well taken and would receive the evidence and the witness was permitted to answer.

There can be little doubt that a witness, however eminent, may not testify in such a general way, his conclusion that the application disclosed the device of the claim at issue. The question is one of the principal things a Court has to decide in such a proceeding as this.

The plaintiff relies greatly upon P. Ex. 56 (disclosure 333, dated October 27, 1924) as showing conception and priority of invention for Smith.

The same question in the same form was asked Dr. Bush, viz: "Do you find that this disclosure 333, Smith Exhibit 56, was an electrical discharge device, (etc, as in the claim or count at issue.)"

This was likewise objected to on the same ground and answer permitted with like statement by the Court. The answer was "Yes." This was equally incompetent and a like conclusion.

Other evidence by Dr. Bush related to interpretation of a sentence on sheet 1 of Smith Exhibit 56 and to high gas pressure and to the operation of such devices.

Mr. Smith gave some like testimony.

Mr. Marshall, president of the plaintiff Raytheon, identified his signature as made on October 27, 1924 on Smith Exhibit 56.

Dr. Bush, Smith & Marshall testified that the oxide coating referred to in Smith Exhibit 56 was to be put only on the inside surfaces of the cathode.

The competent testimony of the other witnesses does not support plaintiff's disclosure of claim in suit.

None of the testimony which was competent bears upon any disclosure by Smith of more than shown in his application and none show a disclosure or conception by Smith of any such electrical discharge device with only an attenuated gas (and no second gas) in connection with an alkaline earth oxide coating on the interior of the cathode such as is defined in the claim at issue.

It must be held that Smith does not disclose the invention shown in the claim at issue.

Plaintiff asserts further that in any event his application disclosure and the other evidence in the case clearly shows that he discloses each and every one of the elements in the claim at issue and is entitled to a patent.

The plaintiffs say in their brief (517): "In a claim, the word 'comprising' means that the elements recited in the claim need not be all of the elements of the device itself. The term means that the device itself may have elements in addition to those recited in the claim. The term does not exclude other matter than that mentioned in the claim."

Plaintiffs cite: In re Gray, Cust. & Pat.App., 53 F.2d 520; In re Cox, Cust. & Pat.App., 73 F.2d 630; Ryerson v. McCurley, Cust. & Pat.App., 88 F.2d 497, supra; Moeller v. Six, Cust. & Pat.App., 96 F.2d 279, supra.

It is, of course, true that all the elements of the claim in issue appear in Smith's application and probably in Exhibit 56 as appears therefrom and from the testimony of Dr. Bush and others.

But it is not true that they all appear without the introduction of another element not shown in the claim, viz, the second gas, without which one of the claim elements, the alkaline earth coating of the interior of the cathode, does not appear.

In Smith there is no such coating without the argon or other like second gas and that second gas is not one of the elements of the claim at issue.

If the second gas is eliminated, so must the coating in the interior of the cathode be eliminated and one element of the claim is then lacking.

If this coating is included, so must the second gas be included, for the teaching is that the second gas is necessary for the protection of the coating. When both are included the invention is something different from, and not, the invention of the claim.

Moreover, the patent office held that the essence of the invention of the claim at issue was in part that the cathode was so constructed that its shape protects the activating coating on the interior of the cathode from disintegration and that only one gas, an attenuated gas at sufficiently high pressure to neutralize space charge, is used without any second protective gas. Smith did not disclose anything indicating utility of the shape of the cathode, though he mentioned an activating coating on the interior of the cathode and an attenuated gas having a sufficiently high pressure to neutralize the space charge.

Boyden Power-Brake Co. v. Westinghouse, 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136, has some analogy.

There it was declared that one who has so far changed the principle of the device that the claims of the patent literally construed have ceased to represent his actual invention, is not an infringer. Here Smith does not disclose the subject matter of the claim, literally or even liberally construed, even though he mentions all the elements.

Plaintiffs assert that the protective function for the interior of the cathode is inherent in the form of the cathode shown by Smith and need not be mentioned.

It is very doubtful that Smith had any such conception or intention of shape or form having a protective function, for he discloses a second gas, argon, as the means for protecting the interior of the cathode, apparently having no other means of protection in mind. He neither mentioned nor described any such function for the shape of the cathode.

He cannot obtain advantage from an unknown and unintended result. Minton v. Thomas, Cust. & Pat.App., 48 F.2d 425.

Smith's reliance upon the second gas to protect the coating from bombardment and disintegration is further illustrated by his claim 34 in his original application of December 21, 1925 (76,793).

Plaintiffs' contention that a previous application of Smith (55,262) shows that Smith had in mind that protection for the coating of the cathode interior was had by the shape of the cathode, was overruled by the patent office.

It is not disputed here that Smith's first application of December 21, 1925, is a constructive reduction to practice and is so held and considered here.

The Court having thus come to the conclusion that Smith has not shown disclosure of the invention of the claim at issue, it is not necessary to discuss priority of invention, for if this Court is correct, Smith never conceived or disclosed the invention defined in the claim at issue.

If this Court is in error in so deciding, for if Smith discloses, then conception

seems to be shown by Smith's Exhibit 56 of October 27, 1924, and reduction to practice by his first application of December 21, 1925 and he antedates Hull.

But no such decision is made here, for in the view of this Court Smith never conceived or disclosed the invention set forth in the claim at issue.

It is conceded that commercial use has no materiality here and it is not necessary to determine whether the tubes sold by Smith were or were not like Hull's device.

Nor is it necessary to consider the operativeness of the Smith device, for that is equally immaterial here.

Judgment may be entered for the defendant dismissing the complaint with costs.