32 C.C.P.A.(Patents)

## In re SMITH.

### Patent Appeal No. 4955.

Court of Customs and Patent Appeals.

Feb. 7, 1945.

Elmer J. Gorn, of Newton, Mass., and Delos G. Haynes, of St. Louis, Mo. (Paul A. Blair, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 5 to 10, inclusive, and 13 to 19, inclusive) in appellant's application for a patent for an alleged invention relating to a space current discharge device.

Counsel for appellant moved to dismiss the appeal as to claims 6 and 9. The motion will be granted.

The remaining claims may be divided into two groups—Nos. 5, 7, 8, 10, 13, 18, and 19 comprising one group, of which claim 5 is illustrative, and Nos. 14, 15, 16, and 17 comprising the other group, of which claim 14 is illustrative.

Claims 5 and 14 read:

"5. A space current discharge device comprising an evacuated envelope, a hollow cathode in said envelope having an interior, thermionic electron-emitting surface, an anode in said envelope outside said hollow cathode, an easy-to-ionize gas in said envelope, a heater element inside said hollow cathode to be independently heated to incandescence for ionizing said gas in said hollow cathode and maintaining the interior surface of said hollow cathode at a temperature of copious thermionic electron emission to produce a discharge between said interior cathode surface and said anode at a relatively low voltage, and a second gas having an ionizing voltage higher than said discharge voltage within said envelope, said second gas having a relatively high pressure compared to said easy-to-ionize gas.

"14. An electrical discharge device comprising a sealed envelope containing electrodes including an anode and a thermionic electrode having a cavity of large internal surface provided with a relatively small opening for the passage of electrons from the interior of said cathode to said anode to maintain the discharge between said cathode and anode and an alkaline earth oxide coated on the interior walls of said cavity, said walls being positioned in shielding relation to one another, a filamentary heater positioned in said cavity, and an attenuated gaseous atmosphere in said envelope at a pressure sufficiently high to neutralize space charge."

The references are: Smith, 1,878,338, Sept. 20, 1932; Smith, 2,201,817, May 21, 1940; Hull 2,236,289, Mar. 25, 1941.

Appellant's involved application discloses an electrical space current discharge device comprising an evacuated envelope which contains a hollow box-like cathode and an anode located outside the cathode. The hollow cathode is provided with a thermionic electron-emitting surface or coating ("preferably in the form of an oxide of one or more of the alkali metals") and a heater element which, when the tube is in operation, is heated "to incandescence," as called for by claim 5, "for ionizing" an easy-to-ionize gas (preferably caesium) in the cathode and maintaining the interior surface of the cathode "at a temperature of copious thermionic electron emission to produce a discharge be-

tween said interior cathode surface and said anode at a relatively low voltage." (It is stated in the brief of counsel for appellant that thermionic electron-emitting surfaces or coatings "emit copious quantities of electrons when heated to temperatures of thermionic emission.")

In addition to the caesium, appellant's envelope is provided with a monatomic gas, such as argon, having, as stated in claim 5, "an ionizing voltage higher than said discharge voltage within said envelope, said second gas having a relatively high pressure compared to said easy-to-ionize gas."

It appears from appellant's application that, among other things, the monatomic gas serves to prevent disintegration of the thermionic electron-emitting surface or coating of the hollow cathode.

Although two patents (Nos. 1,878,338 and 2,201,817) of appellant are cited as references, the Board of Appeals relied upon patent No. 2,201,817 in rejecting the first group of claims (Nos. 5, 7, 8, 10, 13, 18, and 19), and held that those claims were unpatentable over claims 39, 40, 41, and 42 of the patent.

It is unnecessary that we state in detail the invention disclosed in appellant's patent No. 2,201,817. It is sufficient to say that the patent relates to electronic discharge apparatus and a method of operating the same, and, so far as the issues here are concerned, is quite similar to appellant's involved application.

It will be observed that appealed claim 5 calls for a heater element inside the hollow cathode.

It is contended here by counsel for appellant that in appellant's patent (No. 2,201,817) the heater element "is carefully separated and shielded from the hollow cathode chamber * * * by being placed in a separate adjacent closed chamber."

In claim 39 of the patent the heater element is stated to be within the hollow cathode structure and independently heated for the precise purpose called for by appealed claim 5. The only difference between appealed claim 5 and claim 39 of the patent, so far as the location of the heater element is concerned, is that in claim 5 the heater element is stated to be inside the hollow cathode, whereas in claim 39 it is stated to be within the hollow cathode structure. No contention is made here that claim 5 contains any other pat-

entable subject matter over claim 39 of the patent.

Claims 5 and 7 differ from each other only in that claim 7 calls for an alkali metal vapor in the envelope and a second gas which is referred to as a monatomic gas.

Claim 40 of appellant's patent calls for an alkali metal vapor and a monatomic gas inside the envelope. It is obvious, therefore, that the feature relied upon for lending patentability to claim 7 is set forth in claim 40 of the patent.

Appealed claim 8 calls for caesium vapor and a second gas (argon) inside the envelope.

Claim 41 of the patent calls for both caesium and argon.

Appealed claim 10 recites that the heater element inside the hollow cathode is to be "independently heated to a temperature of incandescence sufficiently to ionize the gas within said hollow cathode by *irradiation.*" (Italics not quoted.)

Claim 42 of appellant's patent calls for a "heater element inside said hollow cathode structure to be independently heated to maintain said coating on said surface at a temperature of electron emission to sustain an arc-like discharge between said hollow cathode structure and said anode."

The purpose and function of the heater element as set forth in claim 10 and claim 42 of appellant's patent is precisely the same, and, in our opinion, the use of the word "irradiation" in appealed claim 10 does not patentably distinguish that claim from claim 42 of appellant's patent.

Appealed claim 13 is admittedly similar to appealed claim 5, except that it specifies caesium vapor as the low pressure gas and a monatomic gas of relatively high pressure. It is also similar to appealed claim 8 which, as hereinbefore noted, calls for caesium and argon inside the envelope.

Appealed claim 18 is similar to appealed claim 5, except that it does not call for a monatomic gas. Counsel for appellant rely for patentability of that claim on the fact that it calls for the incandescent filament being within the hollow cathode.

Appealed claim 19 is similar to appealed claim 8 in that it calls for caesium vapor inside the envelope. However, it omits the monatomic gas as does claim 18. Counsel for appellant rely for patentability of that claim on the reasons advanced as to claim 18.

In appellant's patent the hollow cathode is stated to be in the form of a cylinder having a "closed bottom and an open top closed" by a perforated disk. The hollow cathode is substantially enclosed in a cup. The lower end of the cup is spaced from the bottom of the hollow cathode and forms a chamber in which a heater element is mounted. The heat from the heater element is imparted to the hollow cathode "by direct radiation and by conduction through the cup." "Thus," it is stated in the patent, the heater element "constitutes a radiation heater whereby the cathode may readily be heated to a temperature of thermionic emission."

The difference between the structure disclosed in appellant's patent and that defined by the aforesaid claims on appeal is that the claims call for the heater element being within the *hollow cathode,* whereas in the patent it is stated to be inside the *hollow cathode structure*.

We are unable to concur in the views urged upon us by counsel for appellant that there is a patentable distinction between the structure defined by claims 5, 7, 8, 10, 13, 18, and 19 and that claimed in appellant's patent. The function of the heater element is substantially the same in both structures, and there is nothing of record or in the brief of counsel for appellant to indicate that there is a patentable distinction between the aforesaid claims on appeal and claims 39, 40, 41, and 42 of appellant's patent. We are unable to hold, therefore, that the tribunals of the Patent Office erred in rejecting appealed claims 5, 7, 8, 10, 13, 18, and 19.

Appealed claim 14 was rejected by each of the tribunals of the Patent Office as being unpatentable over claim 8 of the Hull reference patent.

 It appears from the record that claim 8 of the Hull patent was the issue in an interference (No. 66,016) between appellant's involved application, No. 504,611, filed December 24, 1930, and the Hull application, No. 156,713, filed December 23, 1926, which matured into the Hull reference patent. The filing date of Hull's application being prior to the filing date of appellant Smith's involved application, Smith was the junior party.

Subsequent to the declaration of the interference and during the motion period, Smith moved to shift the burden of proof, claiming that he was entitled to December 21, 1925, the filing date of his application No. 76,793 of which his involved application is stated to be a continuation, for conception and reduction to practice of the invention there involved.

The Examiner of Interferences denied the motion to shift the burden of proof, holding that appellant's prior application did not disclose the invention defined by the claim constituting the count in the interference.

After the motion period had expired, the party Hull moved to dissolve the interference on the ground that the Smith application there involved did not support the count. That motion was refused consideration because it was filed after the motion period had expired.

Thereupon, evidence was submitted by the parties.

Thereafter, in his decision, the Examiner of Interferences referred to the disclosure in appellant's application filed December 21, 1925, and stated that it and that of his application involved in the interference were substantially duplicates. However, the interference was not dissolved, and the examiner considered the case on its merits and awarded priority of invention to the party Hull.

On appeal, the Board of Appeals also considered the case on its merits and affirmed the decision of the examiner awarding priority of invention to the party Hull.

No appeal was taken from the decision of the Board of Appeals.

The count in the interference (claim 8 of the Hull reference patent) reads: "8. An electrical discharge device comprising a sealed envelope containing electrodes including an anode and a thermionic electrode having a cavity of large internal surface provided with a relatively small opening for the passage of electrons from the interior of said cathode to said anode to maintain the discharge between said cathode and anode and an alkaline earth oxide coated on the interior walls of said cavity, said walls being positioned in shielding relation to one another, a filamentary heater positioned in said cavity and an attenuated gas in said envelope at a pressure sufficiently high to neutralize space charge."

Appellant Smith and his assignee, Raytheon Inc., brought suit against the party Hull and his assignee, General Electric Company, in the United States District Court for the Northern District of New

York, under section 4915 of the Revised Statutes, 35 U.S.C. § 63, 35 U.S.C.A. § 63, wherein the plaintiffs prayed for a judgment holding that they were entitled to a patent for the invention defined by the count or claim there in issue (the count of the interference), and "that such adjudication" authorize the Commissioner of Patents to issue a patent to them.

In their answer, the defendants contended, among other things, that neither of Smith's applications (Nos. 76,793 and 504,611) disclosed the subject matter defined by the count there in issue.

In addition to the record in the interference case, certain other evidence was introduced in the District Court.

After considering the evidence in the case, the court held that neither of the Smith applications disclosed the invention defined by the claim constituting the count in the interference, and stated that if it was in error in holding that appellant Smith did not disclose the invention in either of his applications, he was entitled to a date as early as October 27, 1924, for conception of the invention, in accordance with his Exhibit No. 56, and reduction of it to practice by the filing of his application, No. 76,793, December 21, 1925. The court stated, however, that "no such decision is made here, for in the view of this court Smith never conceived or disclosed the invention set forth in the claim at issue."

Judgment was entered dismissing the complaint—Raytheon Mfg. Co. et al. v. General Electric Co. et al., D.C., 34 F. Supp. 40.

On appeal, the Circuit Court of Appeals, Second Circuit, affirmed the judgment of the District Court—123 F.2d 819.

It will be observed that the only difference between claim 8 of the Hull patent, the issue of the interference, and appealed claim 14 is that the claim of the patent calls for "an *attenuated gas* in said envelope," whereas claim 14 calls for "an *attenuated gaseous atmosphere* in said envelope." (Italics ours.) It is obvious that the use of the term "attenuated gaseous atmosphere" in appealed claim 14 does not patentably distinguish that claim from claim 8 of the Hull patent which calls for "an attenuated gas."

Claims 15, 16, and 17 were rejected by the tribunals of the Patent Office on the ground that they were not patentable over claim 8 of the Hull patent, in view of claims 39 to 41, inclusive, in appellant's reference patent No. 2,201,817.

In his statement to the Board of Appeals, the Primary Examiner pointed out that claims 15 and 16 were identical with the count in the interference (claim 8 of the Hull patent), except for the last clause in each of those claims which reads: "a second gas [specified in claim 16 as argon] at a substantially higher pressure than that of said first-named gas"; that that feature of the claims had been patented to appellant in claims 39 and 41 of his patent No. 2,201,817; that claim 39 calls for a "second gas having a relatively high pressure compared to said easy-to-ionize gas"; that claim 41 calls for a second gas (argon) of a pressure higher than that of the first-named gas (caesium); and that claim 17 is broader than claims 15 and 16. Claim 40 of appellant's patent also calls for a second gas (a monatomic gas) "having a relatively high pressure compared" to the first-named gas.

It may be said at this point that claim 17 is broader than claims 15 and 16 in that it calls for but one gas in the envelope. The gas is stated to be "an attenuated gas in said envelope at a pressure sufficiently high to neutralize space charge." The quoted language is precisely the same as that contained in claim 8 of the Hull patent.

It would seem to be too obvious to require extended discussion that claims 15 and 16 are not patentable over the interference count (claim 8 of the Hull patent) in view of claims 39 to 41, inclusive, in appellant's reference patent. As stated by the Primary Examiner, the only feature in claims 15 and 16 not present in the interference count is present in claims 39 and 41, as well as in claim 40, of appellant's patent which define a structure similar to that here involved.

Claim 17 is substantially the same as the count in the interference, differing therefrom only in phraseology. The count of the interference calls for but one gas ("an attenuated gas in said envelope") precisely as does appealed claim 17.

We are of opinion, therefore, that appealed claims 15 and 16 are unpatentable over claim 8 of the Hull patent in view of claims 39 to 41, inclusive, in appellant's reference patent No. 2,201,871, and

that appealed claim 17 is unpatentable over claim 8 of the Hull patent.

Claims 15, 16, 17, 18, and 19 were also rejected by the Primary Examiner on the ground of estoppel because of the failure of appellant to move, under rule 109 of the Rules of Practice in the United States Patent Office, to add such claims to the interference between appellant and the party Hull.

The Board of Appeals apparently affirmed the decision of the Primary Examiner rejecting claims 15, 16, 17, 18, and 19 on the ground of estoppel, although it did not expressly refer to any particular claim in discussing that ground of rejection.

Much of the brief of counsel for appellant is devoted to a discussion of the rejection of appealed claims 15, 16, and 17 on the ground of estoppel. Owing to the fact, however, that we are of opinion that those claims are unpatentable for the reasons hereinbefore stated it is unnecessary that we discuss that ground of rejection.

The appeal is dismissed as to claims 6 and 9.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed as to claims 5, 7, 8, 10, and 13 to 19, inclusive.

Affirmed.